GOTHARD, Judge.
This appeal is from denial of a claim under, the Longshore and Harbor Workers’ Compensation Act (LHWCA), 33 U.S.C. Sec. 905(b).
The plaintiff, Chester J. Orgeron, Jr., was injured on September 9,1983, when he fell between two “pontoons” or “work barges” in Avondale’s Harvey Quick Repair Yard, in the Harvel Canal. He was employed as a ship repairman by Avondale Shipyards, Inc. and was working at night, standing on the larger of two abutting pontoons that were tied up and being used as a work platform under the stem of a ship. Unaware that the pontoons had separated, he stepped through the opening and was injured.
Orgeron filed suit against his employer, Avondale, under the LHWCA, alleging that Avondale as owner of the barges (pontoons) was negligent in failing to equip the barges with proper and safe equipment to secure and keep the barges together. Af- - ter a bifurcated trial of liability only, the judge took the matter under advisement and entered judgment in favor of Avon-dale. The crux of his reasons for judgment was the plaintiff’s failure to carry his burden of proof that the structure on which he was hurt was a vessel, as required for recovery under the statute.
The appellant raises as issues: (1) whether or not the Avondale work barges (pontoons) were vessels for purposes of 33 U.S. C. Sec. 905(b); and (2) whether or not Avondale was negligent in its capacity as a vessel owner.

Jurisdiction Under Section 905(b)

Under Section 905(b) a person otherwise covered under the LHWCA may bring a maritime tort action against the vessel upon which he was injured for the negli *641 gence of the vessel.[1] The statute was amended in 1984 to prohibit suits against the employer in any capacity. At the time of Orgeron’s injury, however, suit could be brought against the owner of a vessel who was also the employer of the injured worker, as is the case here. Chiasson v. Rogers Terminal and Shipping Corp., 679 F.2d 410 (5th Cir.1982). A recent en banc decision by the U.S. Fifth Circuit, Richendollar v. Diamond M Drilling Co. Inc., 819 F.2d 124 (5th Cir.1987), on reconsideration, set out its conclusions as to the determination of maritime jurisdiction and the requisites for a maritime tort action under 33 U.S.C. Sec. 905(b). The court stated, at 125:
... We reiterate today when it enacted Sec. 905(b), Congress did not create a new or broader cause of action in admiralty than that which previously existed, but rather, it curtailed available third party tort actions, and in doing so it neither expanded nor constricted maritime jurisdiction. We hold that in order for a waterborne structure to qualify as a “vessel” under Sec. 905(b), it must be a vessel for purposes of maritime jurisdiction. Such a vessel must be capable of navigation or its special purpose use on or in water. We further hold that to be cognizable under Sec. 905(b), a tort must occur on or in navigable waters subject, of course, to the special provisions of the Admiralty Extension Act, and there must be the traditional admiralty nexus.... [Footnotes omitted.]
Earlier on, the court had said in Offshore Company v. Robison, 266 F.2d 769, 779 (5th Cir.1959), a Jones Act case:
Attempts to fix unvarying meanings have a firm legal significance to such terms as “seaman”, “vessel”, “member of a crew” must come to grief on the facts. These terms have such a wide range of meaning, under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts....
The appellant argues that the characteristics of the craft from which he fell conforms to the definition of vessel in 1 U.S.C. Sec. 3: “The word ‘vessel’ includes every description of water-craft or other artificial contrivance used, or capable of being used, as a means of transportation on water.” His position is that capability of transportation is the only test for 905(b) claims and that the tests for Jones Act claims[2] are different and inapplicable.
The appellee contends that the test for vessel status in all maritime claims is the same: whether or not the design and use of a water-borne structure is for navigation and commerce. Obviously, the test incorporates the requirement that a craft be capable of transportation on water. The Robert W. Parsons, 191 U.S. 17, 24 S.Ct. 8, 48 L.Ed. 73 (1903); Bernard v. Binnings Const. Co., Inc., 741 F.2d 824 (5th Cir.1984). The Bernard court made no distinction between the criteria for vessel status in the Jones Act and the general maritime law[3] and determined that the small, raft-like structure, a “work punt”, at issue was not a vessel.
The Fifth Circuit had recognized in Offshore v. Robison, supra, and later in Cook *642 v. Belden Concrete Products, Inc., 472 F.2d 999 (5th Cir.1973) and Bernard v. Binnings Const. Co. Inc., supra, that such special purpose vessels as submersible drilling barges and floating dredges designated for navigation and commerce are vessels within the general maritime jurisdiction. The Bernard court distinguished three common factors in cases where special purpose water-borne structures were determined not to be vessels:
... (1) the structures involved were constructed and used primarily as work platforms; (2) they were moored or otherwise secured at the time of the accident; and (3) although they were capable of movement and were sometime moved across navigable waters in the course of normal operations, any transportation function they performed was merely incidental to their primary purpose of serving as work platforms.... Bernard v. Binnings Const. Co., Inc., supra, at 831.
The testimony at trial indicates that the pontoons were rectangular, built of metal with a depth of two feet. They had no living quarters, bilge pumps, below deck storage, navigation lights or motive power. They were used only in Avondale’s Quick Repair facility in a section of the Harvey Canal that is about 1,000 feet in length. The pontoons were used as work platforms which were slipped under the overhangs of boats for repair or overhaul. They were pulled in and out of position either by hand-held ropes or by a crane on the facility’s train track. They could carry as much as a ton of equipment or such parts of ships as propellors or anchors but carried no cargo and were only moved about within the facility waters from job to job.
The purpose and use of the pontoons was that of work platforms for repairs, and any “transportation” was incidental to that function. Accordingly, we find the trial court correctly determined that the structures were not vessels and the appellant cannot maintain a claim under 33 U.S.C. 905(b). Having found Orgeron has failed to prove the prerequisite for his maritime tort claim, we pretermit consideration of the negligence claim against Avondale.
For the reasons assigned above, the judgment appealed from is affirmed.
AFFIRMED.

. For a history of the statute, see Drake v. Raymark Industries, Inc., 772 F.2d 1007 (1st Cir.1985).

. A Jones Act seaman must satisfy the following criteria:
... (1) he must have a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips_ [Citations omitted.]
Bernard v. Binnings Const. Co., Inc., supra, at 827.

.This finding was noted with approval in Ri-chendollar v. Diamond M Drilling Co., Inc., 819 F.2d 124 (5th Cir.1987).