Ernest D. SHARP

v.

JOHNSON BROTHERS CORP., et al.

Civ. A. No. 86–5005.

United States District Court,
E.D. Louisiana.

Sept. 7, 1989.

---

Kevin A. Galatas, New Orleans, La., for plaintiff.

Sutherland & Juge, Dean A. Sutherland, Joseph Guillbeau, Trial Atty., New Orleans, La., for Wausau Ins. Companies and intervenor.

McGlinchey, Stafford, Mintz, Cellini & Lang, Michael J. Maginnis, Trial Atty., Timothy P. Hurley, New Orleans, La., for Johnson Bros. Corp., St. Paul Fire & Marine Ins. Co.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert B. Acomb, Jr., Richard D. Bertram, New Orleans, La., for Centennial Ins. Co.

Montgomery, Barnett, Brown, Read, Hammond & Mintz, Wood Brown, III, Elizabeth Haecker Ryan, Trial Atty., New Orleans, La., for Employers of Wausau Ins. Co., Part II.

Burke & Mayer, Daniels Knowles, III, New Orleans, La., for St. Paul Fire & Marine Ins. Co.

## REASONS FOR RULING

ARCENEAUX, District Judge.

This matter comes before the Court on motion for a directed verdict by the defendants, Johnson Brothers Corporation ("Johnson Brothers"), its alleged insurers St. Paul Fire & Marine Insurance Company ("St. Paul") and Centennial Insurance Company ("Centennial"), and joined in by third party defendant Wausau Insurance Company ("Wausau Part II"). After thoroughly reviewing the testimony and evidence adduced at trial, the memoranda and argument of counsel, and the law, the Court orally granted the motion for directed verdict in open court, and hereby provides supplemental reasons for holding that the plaintiff is not a seaman, as a matter of law.

Trial on the issue of seaman status had been separated from the issue of liability as to the plaintiff's Jones Act negligence and unseaworthiness claims, and directed verdict was granted after presentation of evidence on the issue of seaman status alone. While it is not entirely clear what standard applies to the precise issue presented, the Court will nonetheless apply the more stringent standard applicable in Jones Act cases in considering the defendants' motion for directed verdict under Fed.R.Civ.Pro. 50. Under that standard, a directed verdict is appropriate only when there is a complete absence of probative fact supporting the plaintiff's position. *Allen v. Seacoast Products, Inc.*, 623 F.2d 355 (5th Cir.1980).[1]

---

1. The Court notes that it is not convinced that the alternative standard set forth in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) should not apply herein, where qualification as a seaman is the issue. In *Allen, supra,* the Fifth Circuit applied the alternative standard to consideration of the unseaworthiness claim, a claim only available to those found to be seamen, which suggests that application of the more stringent standard is primarily based on considerations surrounding the "slight negligence" requirement of the Jones Act. Under the alternative standard, the Court considers all of the evidence in the light and with all reasonable inferences most favorable to the plaintiff, and should properly grant the motion when the facts

The plaintiff, Ernest D. Sharp ("Sharp"), was employed in June 1985 by Johnson Brothers as a piledriver/welder on a construction project involving the replacement of the drawbridge on Southern Railroad's Lake Ponchartrain trestle. He originally claimed seaman status by virtue of his attachment to an alleged fleet of vessels operated by Johnson Brothers consisting of one tug, one crewboat, two material barges, two spud barges, and an unspecified number of small workboats. A Manitowac crane, used mainly for lifting, was affixed to the deck of one of the spud barges, the JG–204. The other spud barge, CMS–206, had an American pile driving crane attached to it. Sharp claims to have been injured on November 29, 1985, when he was standing on the bow of the tug and was struck by a load of angle iron being lifted by the Manitowac crane on the JG–204.

At trial, Sharp testified that he spent 80% of his time on the barges and tug. When asked to verify that testimony on cross examination, Sharp recalled his testimony as including time spent on boats. Sharp's entire claim to seaman status is based on this fact which, for purposes of this motion, the Court assumes was otherwise established.[2] Under these facts, and because the plaintiff's claim relates to the performance of work on more than one alleged vessel, two related issues must first be considered. Because a fleet can only be composed of vessels, the first issue is whether *each* of the barges upon which Sharp worked were "vessels" for purposes of the Jones Act. The second issue is whether the plaintiff presented proof that serves to establish that he was either permanently assigned to or performed a substantial portion of his duties aboard those things which qualify under the law as vessels.

■ The uncontroverted evidence showed that all of these alleged vessels were used in conjunction with the construction project. The barges were shifted by the tug within the construction site as the work demanded. The barges had no navigational equipment or motive power. As it relates to the material barges, Sharp testified that one of the material barges was spudded, and the others tied to a spud barge during use, and that they were primarily used to accommodate the other barges and the work. Sharp also testified that one of the material barges held welding machines, building materials, supplies and the like, but that the material on these barges changed as the work demanded. He also testified that he spent most of his time during the first three weeks of work welding on a material barge.

Although the plaintiff does not dispute that the barges were used as work platforms, he argues that the barges were nonetheless vessels for purposes of determining seaman status because they enjoyed a "significant transportational function." It is uncontroverted that the crane barges were spudded down when in use. The plaintiff's argument relies heavily on evidence indicating that, in addition to the shifting within the construction site, the alleged fleet was moved on four occasions when hurricanes threatened and safe haven

---

and inferences point so strongly and overwhelmingly in favor of the defendants that the Court believes that reasonable men could not arrive at a contrary verdict. Denial is proper when there is substantial evidence opposed to the motion, evidence of such quality that reasonable and fair minded people in the exercise of impartial judgment might reach different conclusions. However, a mere scintilla of evidence is insufficient to present a jury question; there must be a conflict in substantial evidence to create a jury question. In passing on the motion, the Court is not permitted to weigh conflicting evidence and inferences, nor determine the credibility of witnesses. *Boeing, supra* at 374–375.

2. During critical testimony involving work activities, Sharp would regularly refer to what "we" did, as opposed to what *he* did. He explained that "we" referred to the Johnson Brothers crew. In addition, he often failed or refused to provide any information which would serve to quantify the time involved in the various work activities. In so choosing to present this evidence, the plaintiff produced serious problems with regard to his burden under *Barrett v. Chevron U.S.A., Inc.,* 781 F.2d 1067 (5th Cir. 1986), as discussed hereinafter. Nonetheless, the Court has liberally considered as uncontroverted any evidence which could be construed as relative to his own work-related activities.

was sought in Bayou Liberty. The plaintiff also presented evidence in his case that the Manitowac barge and a material barge (and presumably the tug), went to shore to pick up materials on almost a weekly basis at the beginning of the project. Finally, Sharp testified to one trip when the Manitowac crane barge and a material barge went to the southern draw of the trestle to recover a railroad crane that had fallen onto a barge, and one trip when a material barge which was loaded with shells needed in construction.

In *Bernard v. Binnings Construction Co.*, 741 F.2d 824, 831 (5th Cir.1984), the Fifth Circuit surveyed its jurisprudence concerning work platforms found not to be vessels under the Jones Act, and found that those decisions:

> indicate three factors common to them: (1) the structures involved were constructed and used primarily as work platforms; (2) they were moored or otherwise secured at the time of the accident; and (3) although they were capable of movement and were sometimes moved across navigable waters in the course of normal operations, any transportational function they performed was merely incidental to their primary purpose of serving as work platforms.

The plaintiff concedes that the barges were used primarily as work platforms, and has produced no evidence which suggests that any of the barges were not moored or spudded at the time of the accident.[3] The plaintiff did not argue at trial that the shifting of the barges within the construction site being served transformed them into vessels as, indeed, this issue was clearly resolved in *Bernard, supra*. Instead, the plaintiff's argument focuses on the third element, and proceeds on the erroneous assumption that the movements outside the construction site by each alleged vessel can somehow be accumulated, thus creating vessel status for all.

The only evidence introduced by the plaintiff in meeting his burden of showing that each and every member of his "fleet" was a vessel concerned the evacuations necessitated by the threat of hurricanes. Quite simply, this Court is unwilling and unable to be the first to hold that the stuff which a vessel makes is determined by the weather or the prudent avoidance of the disaster posed by unforeseen hurricane conditions. *See: Ducrepont v. Baton Rouge Marine Enterprises, Inc.*, 877 F.2d 393 (5th Cir.1989).

 Consideration of the remainder of the evidence as to the transportational function of the barges must be made in light of the plaintiff's initial burden of producing at least some facts probative of vessel status as to each individual barge. As noted heretofore, and discussed more fully hereinafter, the plaintiff either failed or refused to individualize the barges throughout his case. The lack of any other evidence concerning movements of the American pile driving crane barge outside of the immediate vicinity of the construction site is critical, since it concerns the primary piece of equipment used in the pile driving operations by this welder/pile driver.[4]

As it relates to the issue of transportation function, the only other specific testimony concerned the Manitowac crane barge, and unidentified material barges. This Court does not hesitate to hold that as a matter of law the transportational function reflected in the plaintiff's evidence concerning the Manitowac crane barge was merely incidental to its primary function as a work platform. The same conclusion ap-

---

**3.** The alternative test set forth in *Bernard, supra* is not relevant here, since none of the barges claimed to be work platforms were in navigation at the time of the plaintiff's injuries. Although at the time of the accident, the plaintiff was on the tug, which was moored to the spudded down Manitowac crane barge, the issue relevant to seaman status as to the tug was not its vessel status, but the sufficiency of the plaintiff's attachment.

**4.** At one point in argument at trial, counsel for the plaintiff actually indicated that Sharp was assigned to this barge. In this regard and others, this case falls outside the holding of *Brunet v. Boh Brothers Construction Co.*, 715 F.2d 196 (5th Cir.1983), which involved status by virtue of assignment to a single alleged work platform.

plies to the material barges, even assuming that the same barge was used in the specific movements testified to by the plaintiff. Remembering that *Bernard, supra* recognizes that work platforms may be capable of movement and sometimes moved across navigable waters in the course of normal operations, neither the Manitowac crane barge nor the material barges is vested with vessel status by virtue of such limited and incidental movement. *See: Ducrepont, supra.*

However, the fundamental deficiencies in the proof presented by the plaintiff are most obvious when attention is turned to the quantity of Sharp's work aboard those things which *did* qualify as vessels. There is no dispute that the tug, which was operated by a captain, enjoys vessel status. According to Sharp's testimony, the tug was used primarily to move the barges, although occasionally it would carry light equipment. Sharp testified that, on occasion, he would tell the captain where the barges involved in the pile driving operations needed to be moved, and that sometimes the captain would ask him to turn on the engines during these movements. He also recalled a couple occasions when he held the wheel while the captain went to the bathroom, once when he helped a new captain move some barges, and once during a hurricane when he helped the captain find shore. When the tug was involved in removing old pilings, Sharp stated that he assisted in the operations sporadically over a two week period. Sharp testified that he pumped fuel from the tug to a barge on at least one occasion, at least once assisted in adjusting fuel levels, and at least once sprayed the deck to clean off spilled fuel. He stated that he once helped replace a winch cable, a steering arm on a rudder, and a split in the tug's hull.[5]

Similarly, there is no issue that vessel status was enjoyed by the crewboat, which was used primarily to transport workers to and from the construction site. While Sharp testified that he operated the crewboat on these one-mile trips on a somewhat regular but unspecified basis for a two or three month period during which no operator was employed, this testimony necessarily indicated that this "assignment" to the crewboat was temporary in nature. Sharp's only other testimony relative to the crewboat indicated that he drained oil from it once, now and then washed it off in some unspecified manner, scraped barnacles off it at least once, and once helped repair a unit on the crewboat. In addition, Sharp did not specify in testimony any significant amount of work he performed on the smaller workboats, which may well have been vessels.

In *Barrett, supra,* the Fifth Circuit focused on the requirement that a seaman be assigned *permanently* to a fleet of *vessels* or perform a *substantial* portion of his work on a fleet of *vessels.* Where, as here, "the employee's regularly assigned duties require him to divide his time between vessel and land (or platform) his status as a crew member is determined 'in the context of his entire employment with his current employer.'" *Barrett, supra* at 1075 citing *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1347 (5th Cir.1980).

The fact that Sharp's claim is complicated by the issues attendant to vessel status does not diminish his burden of producing evidence probative of the amount of work performed on vessels under *Barrett, supra.* In this regard, at trial Sharp only testified that he spent 80% of his time working both on the barges and tug and, alternatively, on the barges, tug and boats. Within the confines of this total estimate, Sharp did not otherwise break down the amount of work performed on each alleged vessel, and provided no testimony from which the amount of time spent on each can be derived. It should be noted that Sharp was the only witness presented in the plaintiff's case that testified as to the quantity of time spent on the tug and boats. The other witnesses presented in

---

5. Although there has been no serious contention that the plaintiff was assigned exclusively to this tug for purposes of determining status, the Court nonetheless finds as a matter of law that

the evidence of isolated instances of work by the plaintiff on the tug does not, in itself, begin to approach the quantum required by *Barrett, supra.*

the plaintiff's case testified as to a total percentage of time spent by the plaintiff working on the barges. Although the failure to individualize the barges pervaded through most of the testimony presented by the plaintiff, the only estimate as to the time spent on the tug and boats based on this testimony could be as low as zero or as high as five percent. Beyond this simple calculation, the trial record contains *no* facts upon which further division based on anything other than rank speculation could be made.

Therefore, the plaintiff has failed to produce any evidence probative of the fact that he spent a substantial proportion of his time working aboard the tug, crewboats and workboats, herein found to be vessels. Even if the movements of the Manitowac crane barge and a material barge were sufficient to qualify them as vessels, the record is devoid of facts by which the jury could determine that a substantial amount of time was spent on the resulting fleet composed of the Manitowac crane, the material barge, or barges, the tug, the crewboat and the workboats. Instead, the only reasonable inference which could be reached by the evidence is that this welder/pile driver spent most of his time while on water, driving the hundreds of piles he testified to, in conjunction with the American crane barge, which the plaintiff's proof indicated moved beyond the construction site only during hurricane evacuations. Thus, it was clearly a work platform, not a vessel.

Indeed, in presenting his case, the plaintiff chose to focus on his alleged attachment to *all* of the alleged vessels. Under the facts presented, he could prevail with this trial strategy only if the hurricane evacuations served to visit vessel status on everything he claimed constituted the fleet. In taking this "all or nothing" approach, the proof adduced in the plaintiff's case did not sufficiently direct itself to the underlying issue of individual vessel status, and is not otherwise probative of relevant attachment should any barge fail to be a vessel.

In this regard, it is important to note that both the issue of vessel status and the quantity of work performed by the plaintiff on the resulting vessels have been at the center of dispute from the very inception of this litigation. This recognition, and the ample time provided for discovery in this matter, undermine any argument that critical proof was omitted by oversight.[6]

However, as indicated at trial, the Court additionally finds that Sharp is not a seaman as a matter of law under the logical extension of the doctrine set forth by the Fifth Circuit in *Pizzitolo v. Electro–Coal Transfer Corp.*, 812 F.2d 977 (5th Cir. 1987), *cert. denied* — U.S. ——, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1987). Specifically, this Court finds, as a matter of law, that this bridge construction worker is engaged in the type of maritime employment which is exclusively covered by the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*

Accordingly,

IT IS ORDERED that the motion for a directed verdict by the defendants, Johnson Brothers Corporation, St. Paul Fire & Marine Insurance Company and Centennial Insurance Company, and joined in by third party defendant Wausau Insurance Company, is hereby GRANTED for those reasons presented at trial, as supplemented herein.

IT IS FURTHER ORDERED that counsel involved in the remaining claims in this matter shall advise the Court, by letter or motion, if appropriate, as to the status of those claims in light of the Court's ruling within ten days.

---

6. To the contrary, in light of the history of this matter, the Court firmly believes that the evidence presented by the plaintiff was designed to obfuscate, rather than risk revealing, the lack of factual support for the plaintiff's claim. In both changing his testimony and remaining purposefully vague as to the critical elements of the proof necessitated by the complicated nature of his claim to status, the plaintiff successfully avoided the possibility of pre-trial summary judgment on the issue of his status.