LEE, J.,
dissenting:
¶ 16. The majority approaches this backwards. Following Lane, it acknowledges that the usage of a floating casino barge determines its “vessel” status; however, it never makes this determination, letting itself off the hook by concluding that it need not, since it found that Wininger lacked “seaman” status. This poses a significant problem since “the existence of a vessel is a ‘fundamental prerequisite to Jones Act jurisdiction’ and is at the core of the test for seaman status.” Daniel v. Ergon, Inc., 892 F.2d 403, 407 (5th Cir.1990) (quoting Bernard v. Binnings Constr. Co., 741 F.2d 824, 828 (5th Cir.1984)). It follows that whether Wininger qualifies as a “seaman” hinges on Ameristar’s “vessel” status.
¶ 17. Though the Jones Act does not provide a definition for a vessel, the Act has always been interpreted broadly. Offshore Co. v. Robison, 266 F.2d 769, 774 (5th Cir.1959). “Expansion of the terms ‘seaman’ and ‘vessel’ are consistent with the liberal construction of the Act that has characterized it from the beginning and is consistent with its purposes.” Id. at 780. The absence of any legislative restriction has enabled the law to develop naturally along with the development of unconventional vessels. Id. at 780. As a general principle, where the vessel status of an unconventional craft is unsettled, it is necessary to focus upon “the purpose for which the craft is constructed and the business in which it is engaged.” Gremillion v. Gulf Coast Catering, 904 F.2d 290, 293 (5th Cir.1990). Special purpose structures not usually employed as a means of transport by water but designed to float on water have been found to be Jones Act vessels. Offshore, 266 F.2d at 779.
¶ 18. The purpose for which the Ameris-tar is constructed and the business in which it is engaged are unequivocally clear. The legislative directive found in Miss.Code Ann. § 27-109-1 (1972) limits gaming activities to vessels located on certain navigable waterways and requires that such vessels comply with U.S. Coast Guard regulations. For purposes of the Jones Act, a “vessel in navigation” must be engaged as an instrument of transportation and commerce on navigable waters and need not be “plying the seas” at the time the injury occurs. M. NoRRis, The *6 Law of Seamen, § 2:8 (4th ed.1985). The Ameristar was required to be moored in navigable waters in order to engage in its function as a gaming vessel and was so located at the time of Wininger’s accident. The majority asserts that Wininger’s position as a security guard fails to create a substantial relationship to the navigation of the Ameristar and does not expose her to the perils of the sea as is required before her status as a seaman can be reached in a Jones Act claim. The mere fact that Ameristar is located on navigable waters places it at the risk of the perils of the sea-to which a land-based casino would not have exposure. Since Wininger’s duties as a security guard furthered Amer-istar’s commercial purpose as a gaming vessel and seaman status is often extended to those who are not involved literally in the navigation of a vessel but whose labor contributes to the accomplishment of the vessel’s purpose, Osland v. Star Fish & Oyster Co., 107 F.2d 113 (5th Cir.1939), it therefore follows that if the Ameristar is a vessel, then certainly Wininger could be a seaman.
¶ 19. Since these facts provide an evi-dentiary basis for a Jones Act case to go to the jury, it cannot be said, as a matter of law, that the Ameristar gaming ship is not a Jones Act vessel or that Wininger is not a seaman. I therefore disagree with the majority’s decision to affirm summary judgment and respectfully dissent.
KING, P.J., BRIDGES AND PAYNE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.