960 F.2d 150
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James TAYLOR; Josephine Taylor, Plaintiffs-Appellants,
v.
ANDERSON-TULLY COMPANY, et al., Defendants-Appellees.
 No. 91-6022.
 United States Court of Appeals, Sixth Circuit.
 April 17, 1992.
 
 Before KEITH and MILBURN, Circuit Judges, and ENSLEN, District Court.*
 PER CURIAM.
 
 
 1
 Plaintiffs James Taylor and wife, Josephine Taylor, appeal the district court's grant of summary judgment for defendants Anderson-Tully Company and Patton-Tulley Transportation Company in this action for damages under the Jones Act, 46 U.S.C. § 688, and for maintenance and cure under general maritime law. On appeal, the principal issues are (1) whether the district court properly concluded that plaintiff Mr. Taylor failed to establish that he was a seaman for purposes of the Jones Act, (2) whether the district court correctly concluded that Derrick Barge Number 12 was not a vessel in navigation under the Jones Act, and (3) whether the district court correctly concluded that plaintiff Mr. Taylor was not permanently assigned to any vessel for purposes of the Jones Act.[1] For the reasons that follow, we reverse.
 
 II.
 A.
 
 2
 Plaintiffs filed this action against Mr. Taylor's employer and his employer's subsidiary seeking damages for injuries suffered by plaintiff Mr. Taylor ("plaintiff") on January 24, 1988, while he was employed as a weekend watchman by defendant Anderson-Tully Company. Plaintiff had been employed at Anderson-Tully since August 31, 1987. He normally worked approximately 46 hours each weekend from Thursday afternoon until Monday morning.
 
 
 3
 Anderson-Tully operates a sawmill in Vicksburg, Mississippi. It also owns timberland and contracts for the timber to be cut by an independent contractor. Logs are cut for the mill and shipped to it in barges owned by Anderson-Tully's wholly owned subsidiary, Patton-Tully Transportation Company.
 
 
 4
 As part of its operations, Anderson-Tully owns a derrick barge, Derrick Barge No. 12. At the time of plaintiff's injury, the derrick barge was located on the Mississippi River at mile marker 795 in Lauderdale County, Tennessee. Mr. Taylor's workplace was on Derrick Barge No. 12 which was moored to the river by means of cables and ropes.
 
 
 5
 Cut logs are loaded by Anderson-Tully onto barges at Derrick Barge No. 12. The loaded barges are then pushed together to Vicksburg, Mississippi, by the towboat M/V John Morris, which is owned by Patton-Tully. The empty barges are then pushed back from Vicksburg to Derrick Barge No. 12 to be reloaded with logs.
 
 
 6
 The derrick barge has no engine, but can be pushed by a towboat on the river. However, during the time plaintiff was employed at Derrick Barge No. 12, it was never moved from its location at mile marker 795, although it had been moved to Mississippi and to other job locations prior to that time.
 
 
 7
 Derrick Barge No. 12 is a flat deck barge on which living quarters, including bedrooms, a bathroom, a kitchen and dining quarters, have been constructed. The facilities are used by members of the logging crew during the week and by plaintiff during the weekend.
 
 
 8
 The derrick barge has cavils and timberhead on it which are designed to permit it to be tied to other barges, and it has two towknees on both its bow and stern in order to enable a person to walk from that barge to an empty barge. The derrick barge also has a raked bow and stern, which are the angular front and back of the barge, designed to better enable it to move through the water.
 
 
 9
 The derrick barge is not registered as a vessel with the coast guard. It also has a crane built on it which is used to move logs from the shore onto other barges for river shipment. The crane moves with the barge if it is moved to other locations. The derrick barge has winches which are used both to tie other barges to it and to tie it to the shore. Two generators, diesel fuel tanks for the generators, oil, spare parts, and tools are also located on the derrick barge.
 
 
 10
 When the derrick barge is in operation, its work crew consists of a forklift driver, a crane operator, a cook, and a scaler. On the weekends, plaintiff Taylor was the only person on the derrick barge. Plaintiff slept and ate on the barge during his Thursday-to-Monday shift. The scaler, who is from Mississippi, sleeps on the derrick barge during the week. In addition to the logging operation, the crew also tied barges to the derrick barge, operated the winch, and did other work necessary to keep the derrick barge in operation.
 
 
 11
 During his working hours, plaintiff was allotted eight hours for sleep and three hours for eating; the rest of the time he was to be at work. Plaintiff spent most of his time working as a watchman, and he was not allowed to leave the barge during working hours. He was also expected to check the oil and refuel the generators, maintain the water level in the water tank, wash the derrick, and readjust the ground lines as the river level changed. In addition to being a watchman, these duties usually took about an hour and were performed three times daily, except for washing the derrick which was done only once a weekend.
 
 
 12
 Plaintiff's duties also required him to maintain the lights on the outside of the barges which were tied up at the derrick barge, to check the derrick barge and the barges tied up to it for leaks, and to pump out any water which had leaked into the barges. Generally, two or three barges were tied up at the derrick barge. Plaintiff walked those barges to inspect them, and this took approximately five minutes per barge. The number of barges tied to the derrick barge varied from week to week, and, at times, no barges were tied to the derrick barge. Inspecting the barges took 45 minutes per day when there were three barges tied to the derrick barge; each barge tied to the derrick barge would be inspected three times daily.
 
 
 13
 In addition to his watchman duties on Derrick Barge No. 12, plaintiff also performed watchman duties for Anderson-Tully on Derrick Barge No. 13, which was moored at another location on the Mississippi River. Like Derrick Barge No. 12, Derrick Barge No. 13 was not moved from its moored position during plaintiff's employment with Anderson-Tully. On occasion, plaintiff also worked an eight-hour shift operating a forklift at Derrick Barge No. 13. Further, on at least one occasion, plaintiff also worked as a mechanic on Derrick Barge No. 12 in repairing one of its generators.
 
 
 14
 The accident which forms the basis of this action occurred in the morning hours when plaintiff was checking the barges tied to Derrick Barge No. 12. One of the barges tied to the derrick barge appeared to be listing, and plaintiff boarded it to inspect it. While conducting his inspection, he slipped while climbing over wet logs, and his left leg and ankle fell between the logs resulting in injuries.
 
 B.
 
 15
 Plaintiff filed an amended complaint on February 22, 1989. Defendants filed an answer and subsequently filed a motion for partial summary judgment. Thereafter, plaintiffs filed a motion for summary judgment.
 
 
 16
 On August 1, 1991, the district court entered an order on the cross-motions for summary judgment. The district court found that plaintiff did not satisfy the criteria to be considered a seaman under either the Jones Act or under general maritime law. The court also found no maritime jurisdiction for purposes of a maritime tort claim. Accordingly, the district court granted defendants' motion for summary judgment. Plaintiffs' timely appeal followed.
 
 II.
 A.
 
 17
 Plaintiffs challenge the district court's grant of summary judgment for defendants on their claims under the Jones Act and general maritime law. Summary judgment is appropriate where no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. A district court's grant of summary judgment is reviewed de novo. See Pinney Dock and Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). In our review, this court views all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. See 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987).
 
 
 18
 The benefits of the Jones Act are available only if the claimant qualifies as a seaman. See Bernard v. Binnings Const.Co., Inc., 741 F.2d 824, 827 (5th Cir.1984). The burden of establishing seaman status is on the party claiming the benefits to be derived therefrom. See, e.g., Billings v. Chevron U.S.A., Inc., 618 F.2d 1108, 1109 (5th Cir.1980). Seaman status is ordinarily a question for the trier of fact. Binnings Const., 741 F.2d at 827. The question of seaman status should only be removed from the trier of fact by summary judgment or directed verdict in rare circumstances, and even marginal Jones Act claims should be submitted to the jury. Id.
 
 
 19
 However, the fact that seaman claims are ordinarily decided by the trier of fact does not automatically preclude summary judgment on the issue of Jones Act jurisdiction. Summary judgment is proper on the question of seaman status where the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences on any of the elements of the seaman test. Id. at 828; Petersen v. Chesapeake & Ohio Ry. Co., 784 F.2d 732 (6th Cir.1986). Where the facts upon which summary judgment on the question of seaman status is based are undisputed, the task of an appellate court is to review them to determine whether reasonable persons might draw conflicting inferences. Id. Summary judgment or a directed verdict on the question of who is a seaman under the Jones Act is mandated where the facts and the law will reasonably support only one conclusion. See McDermott Intern., Inc. v. Wilander, --- U.S. ----, 111 S.Ct. 807, 818 (1991).
 
 B.
 
 20
 The Jones Act does not define the term seaman. However, this Court has stated that in determining whether a particular employee is a seaman, the following test applies: (1) is the vessel in navigation, (2) does the employee have a more or less permanent connection with the vessel, and (3) was the employee on board the vessel primarily in aid of navigation. See Searcy v. E.T. Slider, Inc., 679 F.2d 614, 616 (6th Cir.1982) (per curiam). The Fifth Circuit formulated the following test on the question of seaman status: (1) that the injured person be assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water), or performed a substantial part of his or her work on the vessel; and (2) the capacity in which the person was employed or the duties which the person performed contributed to the function of the vessel or to the accomplishment of its mission or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips. See Offshore Company v. Robison, 266 F.2d 769, 779 (5th Cir.1959).
 
 
 21
 This court has held that the test set forth in Robison is virtually the same test used by this court. See Searcy, 679 F.2d at 616. Moreover, the Supreme Court in McDermott, 111 S.Ct. at 817, affirmed the Robison test and held that in order to qualify for Jones Act status, it is not necessary for a workman to aid in the navigation of a vessel; rather, the workman's duties must merely contribute to the function of the vessel or to the accomplishment of its mission in order to be given Jones Act status.
 
 
 22
 In its order granting summary judgment, the district court found that plaintiff Taylor contributed to the function of Derrick Barge No. 12 and, thus, that the second prong of the Robison test was satisfied. The district court held, however, that the first prong of the Robison test was not satisfied because, as a matter of law, Derrick Barge No. 12 is not a vessel in navigation for purposes of the Jones Act. Therefore, the district court concluded that plaintiff was not a Jones Act seaman. The existence of a vessel in navigation is a fundamental prerequisite to Jones Act jurisdiction. Binnings Const., 741 F.2d at 828. The key to seaman status under the Jones Act is employment-related connection to a vessel in navigation. McDermott, 111 S.Ct. at 817.
 
 C.
 
 23
 Plaintiffs argue first that, as a matter of law, Derrick Barge No. 12 is a vessel in navigation for Jones Act purposes, and, alternatively, that the question of Derrick Barge No. 12's status as a vessel in navigation for purposes of the Jones Act is a jury question. These two issues will be considered together.
 
 
 24
 In evaluating a structure's status as a vessel in navigation, the purpose for which the craft is constructed and the business in which it is engaged should be considered. See Binnings Const., 741 F.2d at 829. The size of the structure, its ability to float, the permanence of its fixation to the shore or bottom, and the fact of its movement or its capability of movement across navigable waters are not conclusive of vessel status. Id. Moreover, the case law heavily favors conferring such status upon a craft whose primary mission is the transportation of cargo, equipment, or passengers over navigable waters. The greater the structure's resemblance to conventional seafaring craft, the greater the odds of securing vessel status. See Gremillion v. Gulf Coast Catering Co., 904 F.2d 290, 293 (5th Cir.1990). In light of the bias favoring traditional craft, courts look to whether a given structure maintains or possesses (1) navigational aids, (2) lifeboats and other life-saving equipment, (3) a raked bow, (4) bilge pumps, (5) crew quarters, and (6) registration with the Coast Guard as a vessel. Id. In addition, the intention of the owner to move the structure on a regular basis, the ability of a submerged structure to be refloated, and the length of time that the structure has remained stationary are relevant to the inquiry. Id.
 
 
 25
 Furthermore, as a matter of law, certain dry docks and floating work platforms do not qualify as Jones Act vessels. Generally, there are three common attributes for nonvessels: (1) the structure is constructed to be used primarily as a work platform; (2) the structure is moored or otherwise secured at the time of the accident; and (3) although the platform is capable of movement, and is sometimes moved across navigable waters in the course of normal operations, its transportation function is merely incidental to the platform's primary purpose. Id.; Hurst v. Pilings & Structures, Inc., 896 F.2d 504, 506 (11 Cir.1990); Ducrepont v. Baton Rouge Marine Enter., Inc., 877 F.2d 393, 395 (5th Cir.1984).
 
 
 26
 As between the parties, the facts in this case are undisputed. The district court, applying the three-part test from Gremillion, 904 F.2d at 293-94, found that the derrick barge was not a vessel in navigation for Jones Act purposes. The district court concluded that the derrick barge was used as a work platform to lift logs and place them in the river barges, that the platform was moored and secured to the shore at the time the plaintiff was injured, and that the occasional movement of the derrick barge across navigable waters was incidental to its purpose as a work platform.
 
 
 27
 Although there is some indicia of a traditional vessel, all the facts considered together do not reasonably support a conclusion that Derrick Barge No. 12 was a vessel in navigation. In this case, the derrick barge was not designed or used to transport passengers, cargo, or equipment from place to place across navigable waters. It required towboats or other vessels to move it and remained virtually stationary during any particular project. Therefore, the derrick barge does not qualify as a Jones Act vessel, and the district court did not err in granting summary judgment on this ground.[2] See Ellender v. Kiva Const. & Eng'g. Inc., 909 F.2d 803 (5th Cir.1990).
 
 E.
 
 28
 Plaintiffs also challenge the district court's grant of summary judgment on alternative grounds. They argue that even if Derrick Barge No. 12 was not a vessel in navigation, the log barges tied up to it constitute a fleet of vessels in navigation to which Taylor was assigned. The Robison test need not be satisfied by assignment to one vessel; it may be satisfied by assignment to a specific fleet of vessels. See Ardoin v. J. Ray McDermott & Co., 641 F.2d 277, 281 (5th Cir.1981). A fleet of vessels is an identifiable group of vessels acting together under one control. See Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1074 (5th Cir.1986).
 
 
 29
 Plaintiffs assert that the log barges which Mr. Taylor guarded and maintained as part of his duties constituted a "fleet of vessels." An employee can satisfy the requirement of a relationship with a vessel in navigation by working aboard either one or several vessels. See Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240, 246 (5th Cir.1983), cert. denied, 464 U.S. 1069 (1984). Furthermore, ownership of such barges is not a critical issue as the Jones Act employer need not be the owner or operator of the vessel of which the claimant is alleged to be a crew member. Id. at 245, n. 10. However, as the number of vessels increases or the period of service decreases, the claimant's relationship with the vessels tends to become more tenuous and transitory. Id. at 246. Although such factors are not determinative, they should be considered when applying the Robison test. Id. at 246. For a Jones Act claimant to satisfy the substantial work prong of Robison, it must be shown that he performed a significant part of his work aboard the vessel with at least some degree of regularity and continuity. Id.
 
 
 30
 The district court found that although plaintiff was actually injured while moving over the log cargo of one of the barges attached to Derrick Barge No. 12, he was not permanently assigned to any of the log barges which were brought to the derrick barge. The court further found that different barges were moored to the derrick barge almost every weekend, and that a substantial portion of plaintiff's work was not done on the barges since Mr. Taylor did not spend more than 15 minutes per work day on any one of the log barges.
 
 
 31
 However, in this case, part of plaintiff Taylor's duties was to walk the barges and check them for leaks. If a barge were leaking, plaintiff's duty was to pump out the barge. Thus, Mr. Taylor was responsible for the log barges in his capacity as a watchman during the entire period he was on Derrick Barge No. 12. Moreover, at the time of his injury, plaintiff Taylor was performing his watchman duties; he had noticed that one of the log barges appeared to be listing, and he was walking the barge to inspect it.
 
 
 32
 In Searcy v. E.T. Slider, Inc, 679 F.2d 614, 615 (6th Cir.1982), this court concluded that summary judgment was improperly granted for the defendant by the district court on the workman's Jones Act claim. Id. at 616. In that case, the decedent Searcy was a night watchman whose duties required him to go on board barges moored at defendant's sand and gravel business. This court found that the following facts in the Searcy case might justify a jury's finding that Searcy was permanently connected with the vessels: his duties required him to keep a vigil over the vessels, to board the vessels and check and fill the gas pumps that bailed the vessels as well as checking all the moored vessels for leakage; his duties required him at various times to go aboard the vessels and place lights on them. Further, the watchman spent a substantial amount of his time checking the barges, boarding them approximately once every two hours.
 
 
 33
 Although plaintiff Taylor was required to spend less time on board the log barges in the normal course of his duties than the plaintiff in Searcy was required to spend on board the sand and gravel barges, this case is remarkably similar to the situation in Searcy. Thus, as in Searcy, there are facts in this case which might justify a jury's finding that plaintiff Taylor was permanently connected with the fleet of log barges. Therefore, it is submitted that the district court erred in granting summary judgment on this portion of plaintiff's claim and in not submitting the genuine issues of material fact to a jury. Accordingly, the district court's grant of summary judgment on this portion of plaintiff's Jones Act claim shall be reversed, and the case shall be remanded for further proceedings.
 
 III.
 
 34
 For the reasons stated above, the district court's grant of summary judgment in favor of defendant is AFFIRMED in part, REVERSED in part, and the case is REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 Although plaintiffs asserted a claim in their brief for maintenance and cure, at oral argument plaintiff's counsel expressly stated that plaintiffs are not asserting a claim for maintenance and cure
 
 
 [2]
 At oral argument, counsel for the plaintiff brought to the court's attention the case of Ducote v. V. Keeler & Co., Inc., 953 F.2d 1000 (5th Cir.1992). However, Ducote is clearly distinguishable from this case as the scope of the revetment project being performed by the U.S. Army Corps of Engineers in that case called for the spud barge to be moved for approximately five miles along the bank of the Red River in connection with the piledriving in which the plaintiff was engaged