**Robert J. JOHNSON,
Plaintiff–Appellant,**

v.

**ODECO OIL AND GAS COMPANY, et al., Defendants–Appellees.**

No. 87–3872.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1989.

Thomas S. Keaty, Robert B. Keaty, New Orleans, La., and Lafayette, La., Joseph E. Dugas, New Orleans, La., for plaintiff-appellant.

James H. Daigle, Kent B. Ryan, New Orleans, La., for defendants-appellees.

Before THORNBERRY, KING and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Plaintiff Robert Johnson appeals a summary judgment rendered against him and seeks to remand this action to state court. Johnson contends that he is entitled to bring a Jones Act claim, or alternatively a Longshoremen's and Harbor Workers' Compensation Act ("LHWCA") claim, against ODECO Oil and Gas Company, Inc. for injuries he sustained in 1985 during Hurricane Juan. Finding the district court's opinion to be correct, we affirm.

## I.

In October of 1985 Robert Johnson was employed by ODECO Oil and Gas Company, Inc. He worked and lived on board an oil production platform and storage facility, the OBM No. 1, in the Gulf of Mexico. The structure was towed to its location in the Gulf in 1961 and was secured by flooding two of its nine ballast tanks with water. Ballast rocks were placed around the ballast tanks and cement was poured on the rocks to create extra ballast weight and avoid displacement. Concrete "rip-rap" was placed around the perimeter of the OBM No. 1 to prevent movement. This structure has never been moved, raised, towed, or deballasted since 1961. It is neither self-propelled, nor does it have navigational lights, a raked bow, or bilge pumps. The Coast Guard inspects the OBM No. 1 as a production platform, not as a vessel. Although the structure was moveable at the time it was put to sea in 1961, it has since become extremely difficult to move.

On October 27, 1985, Hurricane Juan struck the Gulf of Mexico, destroying the living quarters of the OBM No. 1. Poisonous gases escaped during the storm and damaged Johnson's eyes and lungs. The hurricane had been classified as a tropical storm until the day it hit the OBM No. 1, when it was upgraded to a hurricane. No hurricane watch was ever posted, and thousands of offshore workers were stranded by the storm.

Johnson filed a Jones Act suit against a number of defendants in state court. The suit was then removed to federal court. The district court denied Johnson's motion to remand and granted summary judgment for ODECO on the grounds that (1) the structure was not a vessel and, therefore, Johnson was not a seaman covered by the Jones Act and (2) Johnson did not allege facts that would give rise to a claim under the LHWCA. 679 F.Supp. 604. Johnson now appeals.

## II.

Johnson argues first that the district court erred in refusing to remand this

cause of action to state court. Because Jones Act cases are nonremovable, Johnson argues that the case was wrongfully removed. Further, he alleges he never waived the right to remand the case to state court.

As a general rule, Jones Act cases are not removable. *Preston v. Grant Advertising, Inc.*, 375 F.2d 439, 440 (5th Cir. 1967); 28 U.S.C. § 1445(a). However, in certain circumstances a party may waive his right to have a case remanded even after a wrongful removal. *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). This court, sitting en banc, recently held that where a plaintiff in a Jones Act case fails to object promptly to removal and "participates in the conduct of that action," then it is within the district court's discretion to determine whether the plaintiff's conduct amounts to a waiver of the right to remand. *Lirette v. N.L. Sperry Sun, Inc.*, 820 F.2d 116, 118 (5th Cir.1987). Thus, under *Lirette*, the extent of a plaintiff's conduct in the federal proceedings determines whether he has "waived his statutory right to object to the exercise of subject matter jurisdiction by the United States district court." *Id.*

Johnson contends that according to these cases, a party waives the right to remand only if he fails to protest the removal before final judgment. ODECO, on the other hand, argues that if a party has participated in discovery and other pretrial litigation matters in federal court following removal, he has waived his right to remand. ODECO's analysis of the law is correct. The language of *Lirette* is clear:

> When a Jones Act plaintiff who has selected a state forum fails to object to the removal of that action to a United States district court with subject matter jurisdiction over that cause of action and participates in the conduct of that action, the United States district court may determine whether such actions amount to waiver of the plaintiff's right to invoke 28 U.S.C. 1445(a).

820 F.2d at 118.

The court nowhere states that waiver only occurs if the motion for remand is filed after the entry of judgment. In fact, in *Harris v. Edward Hyman Co.*, 664 F.2d 943, 944–46 (5th Cir.1981), where the district court denied the plaintiff's motion to remand because of a defective removal petition, the court held that:

> [A]lthough the removal petition was defective when filed, by failing to assert promptly her objections to the defects in the petition and by proceeding with discovery, plaintiff waived her objections to both the procedural irregularities contained in the removal petition and Union's [defendant's] untimely consent ... [We] think it is manifest that under the circumstances, the district court could have found that by participating in discovery in federal court, Harris [the plaintiff] waived her right to remand the action.... Indeed, until the motion to remand was filed, the action proceeded as any other with Harris giving no indication that she was dissatisfied with her federal forum. These acts are consistent with a waiver of a litigant's right to seek a remand to state court.

■ Johnson contends that the plaintiff must take affirmative action in the federal court in order to waive the right to remand. Johnson, however, took just such action as he attended depositions noticed by the defendants and he amended his complaint in federal court to join additional defendants. *Cf. In re Moore*, 209 U.S. 490, 496, 28 S.Ct. 585, 586–87, 52 L.Ed. 904 (1908) (if a nonremoving party has taken action in federal court, such as by amending the complaint, that party has essentially acquiesced in the federal court's jurisdiction), *overruled in part on other grounds, Ex parte Harding*, 219 U.S. 363, 31 S.Ct. 324, 55 L.Ed. 252 (1911). Not only did considerable discovery take place under federal court auspices for nearly a year before Johnson moved to remand, but he did not file this motion until after defendants moved for summary judgment. We must uphold the district court's conclusion that Johnson waived his right to remand.

### III.

■ Johnson cannot sustain an action under the Jones Act unless the OBM No. 1

was a vessel. *Blanchard v. Engine & Gas Compressor Services, Inc.*, 575 F.2d 1140, 1141 (5th Cir.1978). Johnson relies on *Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817 (5th Cir.1975), *cert. denied*, 423 U.S. 1050, 98 S.Ct. 777, 46 L.Ed.2d 639 (1976), to support his claim that the OBM No. 1 is a vessel. The structure described in *Hicks* appears similar to the structure in the instant case. The *Hicks* structure is described as "a submersible oil storage facility ... made up of a superstructure ... above cylindrical storage tanks." *Id.* at 819. A continuous fin or skirt around the *Hicks* structure was designed to sink the structure to the ocean floor and to secure it there in a stationary position. The structure was towed to its site in the Gulf of Mexico and secured by flooding the ballast tanks with water, as well as by use of rock ballast. The structure contained galley and crew quarters, and was designed so that it could be moved and raised for scraping and repair. On those facts, the *Hicks* court found the structure to be a vessel. *Id.* at 819–20.

ODECO distinguishes *Hicks* on the grounds that the *Hicks* defendants stated that they had considered moving the structure to another location in the Gulf. In the instant case, there is no evidence that defendants ever had any intention of moving the structure to another site. The OBM No. 1 remained in the same place for twenty-four years before the onslaught of Hurricane Juan in 1985, and it remains there even today. It was affixed to the Gulf floor by means of ballast tanks, rocks, cement, and concrete "rip-rap," and was attached to the fixed header platform by twelve pipelines and a bridge. All evidence indicates ODECO's intent was to permanently affix the OBM No. 1 to its position on the ocean floor.

Further, more recent Fifth Circuit cases have narrowed the ruling in *Hicks*. In *Bernard v. Binnings Construction Co., Inc.*, this court listed the following factors to consider in determining whether a given structure is a vessel: (1) navigational aids; (2) raked bow; (3) lifeboats and other life-saving equipment; (4) bilge pumps; (5) crew quarters; (6) registration as a vessel

with the Coast Guard. 741 F.2d 824, 832 (5th Cir.1984). The court suggested several other factors in *Hemba v. Freeport McMoran Energy Partners, Ltd.*: (7) intentions of the owner to move the structure on a regular basis; (8) ability of the submerged structure to be refloated despite years of corrosion and deterioration; (9) length of time the structure has remained stationary. 811 F.2d 276, 278 (5th Cir. 1987). The OBM No. 1 satisfies only two of these nine requirements, as it has crew quarters and life-saving equipment. Yet, these two features are not sufficient to render the structure a vessel because they routinely exist on structures, such as production platforms, that are not vessels.

In *Hemba*, this Court held that a structure that was moved only twice in twenty years and that could not be moved again was not a vessel. 811 F.2d at 278. The *Hemba* structure was built on land, floated to sea, sunk by filling the ballast tanks, and secured by pilings embedded in the ocean floor. Indeed, it was easier to move the structure in *Hemba* than the one in the instant case. The *Hemba* structure was held to not be a vessel. In *Bernard*, this Court also declined to classify as a vessel a structure that was occasionally moved, but which primarily served as a work platform. 741 F.2d at 831.

Therefore, even though at first blush the *Hicks* decision appears to support Johnson's arguments, more recent Fifth Circuit cases indicate that *Hicks* is no longer the controlling standard. This narrowing of *Hicks* through such cases as *Bernard* and *Hemba*, along with the fact that the owners of the structure in *Hicks* contemplated moving the structure to a new position, support ODECO's position that the OBM No. 1 is not a vessel. Since the structure is not a vessel, Johnson cannot be a seaman and, as the trial court held, may not maintain a claim under the Jones Act.

IV.

■ Johnson finally contends that if a seaman's claim is unavailable to him, he may file suit against his employer irrespective of coverage by the Longshoremen's and Harbor Workers' Compensation Act.

That statute, he contends, provides workers' compensation for *accidental* injury or death arising out of and in the course of employment. 33 U.S.C. § 902(2) and 903(a). Johnson contends that his damage did not occur as the result of an "accident" but rather as the result of a "direct intentional act" of his employer, which allegedly made a conscious decision to leave its employees aboard the OBM No. 1 in the Gulf of Mexico rather than to evacuate in the face of the impending Hurricane Juan. Johnson's brief on appeal then adds, "Any reasonable person would foresee resulting injury when personnel are left in the path of a hurricane."

The district court parsed somewhat conflicting authorities on the reach of the LHWCA over intentional torts,[1] but it found that ODECO's alleged conduct clearly did not constitute an intentional tort. We agree with the district court's latter conclusion and find it unnecessary to examine the scope of the LHWCA in this case. Even if that statute is not so exclusive as to preclude a lawsuit by an employee for an intentional tort committed by his employer, this is not such a lawsuit. Johnson does not seriously allege, nor did he produce any summary judgment proof, that ODECO deliberately left its employees on OBM No. 1 for the purpose of exposing them to injury by a hurricane. As his brief plainly states, the most he can aver is that ODECO made a decision which any reasonable person would foresee might result in injury. This is negligence language, not the description of any intentional tort with which we are familiar. Hence, as the district court noted, Johnson's exclusive remedy lies within the LHWCA.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

1.  Compare *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 813 (5th Cir.1988); *Nations v. Morris*, 483 F.2d 577, 587–89 (5th Cir.) *cert. denied*, 414 U.S. 1071, 94 S.Ct. 584, 38 L.Ed.2d 477 (1973) (both cases containing statements that LHWCA is a complete and self-sufficient remedy) *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986); with *Sample v. Johnson*, 771 F.2d 1335, 1346 (9th Cir.1985); *Houston v. Bechtel Associates Professional Corp.*, 522 F.Supp. 1094, 1096 (D.D.C.1981); *Davis v. Rockwell International Corp.*, 596 F.Supp. 780, 785 (N.D.Ohio 1984) (cases suggesting that intentionally inflicted injury may not be covered by LHWCA).