MANUEL R. ("MANNY") SUÁREZ JIMÉNEZ y OTROS, peticionarios,
*v.* COMISIÓN ESTATAL DE ELECCIONES y OTROS, recurridos.

*Número:* CT-2004-004          *Resuelto:* 30 de noviembre de 2004

*María Soledad Piñeiro,* abogada de la parte peticionaria; *Pedro Delgado, Luis Estrella, Gerardo De Jesús Annoni, Pedro Ortiz Álvarez, Thomas Rivera Schatz* y *Juan Dalmau,* abogados de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión disidente.

Este Tribunal, no hay duda, es el intérprete máximo de la Constitución y de las leyes del Estado Libre Asociado de Puerto Rico. Ello *no* significa, sin embargo, que tengamos el poder y la facultad para actuar en forma arbitraria y a destiempo. La razón resulta ser sorprendentemente sencilla: esa misma Constitución —la cual, repetimos, nos designa como el intérprete máximo de sus disposiciones— *lo prohíbe.*

*Disentimos* de la opinión emitida por una mayoría de los integrantes del Tribunal *por dos razones.* En *primer* lugar, el recurso presentado ante nuestra consideración *no* presenta un "caso o controversia" sobre el cual este Tribunal deba expresarse. Al así hacerlo, la Mayoría incurre en la emisión —prohibida por nuestra Constitución— de una "opinión consultiva".

En *segundo* lugar, disentimos por cuanto en el presente caso —al presentarse una solicitud de remoción ("Notice of Removal") ante la Corte de Distrito Federal para el Distrito de Puerto Rico con relación al caso ante nuestra consideración y al haber sido notificados de ello— este Tribunal *no podía continuar adelante con los procedimientos* hasta que la Corte de Distrito federal *pasase juicio sobre la procedencia* de dicha solicitud de remoción; ello en vista de la *clara disposición a esos efectos* en 28 U.S.C.A. sec. 1446(d).[1]

_____

[1] Este inciso dispone lo siguiente: "Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof

Acorde con lo anteriormente expresado, *pospusimos* la certificación de la presente opinión disidente, *reservándonos* el derecho a *publicarla posteriormente,* conforme así lo establece la Regla 5 de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A. Hoy, y obligados por las disposiciones de la citada disposición reglamentaria —la cual nos concede únicamente el término de diez días para publicar la ponencia a partir de la fecha de reserva— *procedemos a certificar la presente opinión disidente.* Veamos.

## I

El 2 de noviembre de 2004 se celebraron las elecciones generales en Puerto Rico. Tras el conteo inicial, la Comisión Estatal de Elecciones —de acuerdo con lo dispuesto en el Art. 6.007 de la Ley Electoral de Puerto Rico, Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. sec. 3267— informó que según los resultados preliminares el candidato a gobernador que más votos había acumulado hasta ese momento era el Lcdo. Aníbal Acevedo Vilá.

El 9 de noviembre de 2004 comenzó el escrutinio general de todas las papeletas de acuerdo con lo dispuesto en el Art. 6.008 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3268. Durante este proceso, el Partido Nuevo Progresista —por conducto del Lcdo. Thomas Rivera Schatz, Comisionado Electoral del mencionado partido— objetó la validez de ciertas papeletas estatales en las que los electores hicieron tres marcas, una bajo la insignia del Partido Independentista Puertorriqueño, otra en el encasillado provisto para el candidato a gobernador por el Partido Popular Democrático y otra en el encasillado correspondiente al candidato a comisionado residente del Partido Popular

---

to all adverse parties *and shall file a copy of the notice with the clerk of such State court,* which shall effect the removal *and the State court shall proceed no further unless and until the case is remanded."* (Énfasis suplido.)

Democrático. En específico, argumentó que estas papeletas eran nulas, ya que no había forma de determinar la verdadera intención del elector.

Mediante resolución a esos efectos, el 12 de noviembre de 2004 el Lcdo. Aurelio Gracia Morales, Presidente de la Comisión Estatal de Elecciones, *resolvió que las papeletas en controversia eran válidas y que serían adjudicadas como votos mixtos.* Al fundamentar su decisión, Gracia Morales citó el inciso (33) del Art. 1.003 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3003(33),([2]) y la Regla 78 del Reglamento para las Elecciones Generales y el Escrutinio General de 2004,([3]) aprobado el 2 de julio de 2004, pág. 95.

Por otro lado, el 8 de noviembre de 2004 el Presidente de la Comisión Estatal de Elecciones emitió otra resolución donde reiteró su determinación a los efectos de que procedía realizar un escrutinio general previo al recuento de votos dispuesto en el Art. 6.011 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3271. *Ninguna de estas resoluciones fueron revisadas dentro del término legal establecido, por lo que advinieron finales y firmes luego de los diez días siguientes a su notificación.*

Así las cosas, el 16 de noviembre de 2004 los aquí peticionarios presentaron ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una demanda sobre sentencia declaratoria en la cual alegaron que el 12 de noviembre de 2004 los codemandados Pedro Rosselló González y Thomas Rivera Schatz, mediante una acción instada ante el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico, habían solicitado, entre otras co-

---

([2]) El referido inciso dispone: *"Papeleta mixta.*—Significará aquella en que el elector vota marcando en la papeleta electoral, individualmente o en combinación con una marca bajo la insignia de un partido, cualquier combinación de candidatos, sean o no del mismo partido o independientes, o mediante la inclusión de nombres no encasillados en la papeleta."

([3]) El inciso (2) de esta regla dispone: "Papeleta Mixta—Aquélla en la que el (la) elector(a) vota marcando en la papeleta electoral, individualmente o en combinación con una marca por la insignia de un partido político, cualquier combinación de candidats, sean o no del mismo partido político o independientes, o mediante la inclusión de nombres no encasillados en la papeleta."

sas, que se declararan nulas las papeletas estatales en las que aparecieran las tres marcas referidas.([4]) Argumentaron que con dicha acción los codemandados "pretend[ían] que la CEE anul[ara] el voto de los demandantes, y de todos aquellos que como ellos votaron".([5]) Asimismo, adujeron que "[t]al privación constituiría un daño irreparable a los demandantes pues sus votos no serían contados, lo que equivale a impedirles que ejerzan su derecho constitucional al derecho al voto". Íd.

En vista de lo anterior, los peticionarios —*aun cuando admitieron que estos votos habían sido declarados válidos por la Comisión Estatal de Elecciones y estaban siendo contados y adjudicados como votos mixtos*— solicitaron del foro de instancia que emitiera una sentencia en la que declarara la validez de estas papeletas. Asimismo, solicitaron que el referido foro emitiera un interdicto permanente ordenándole a la Comisión Estatal de Elecciones que contara dichos votos.

El Tribunal de Primera Instancia desestimó la demanda presentada al concluir que el pleito *no* era justiciable.([6]) Al fundamentar su determinación, el referido foro llamó la atención hacia el hecho de que el 12 de noviembre de 2004 el Presidente de la Comisión Estatal de Elecciones había emitido una resolución en la cual determinó que las papeletas en controversia debían ser adjudicadas y contabilizadas como "papeletas de voto mixto"; esto es, el Tribunal de Primera Instancia entendió que el pleito presentado por los demandantes era académico, pues ya la Comisión había tomado una decisión que era favorable a los demandados.

---

([4]) En esta demanda se solicitó, además, que dicho tribunal federal le ordenara a la Comisión Estatal de Elecciones que procediera a realizar el recuento de votos dispuesto en el Art. 6.011 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3271, de forma simultánea con el escrutinio general.

([5]) Véase pág. 3 de la Demanda presentada ante el Tribunal de Primera Instancia, Sala Superior de San Juan, en el caso *Manuel R. ("Manny") Suárez Jiménez, et al. v. Comisión Estatal de Elecciones, et al.*, Núm. KPE 04-3568.

([6]) El Tribunal de Primera Instancia adelantó su decisión en corte abierta y el 18 de noviembre de 2004 dictó la sentencia por escrito.

Inconformes con dicha determinación, los demandantes acudieron ante este Tribunal mediante un recurso de certificación, alegando que el Tribunal de Primera Instancia incidió al

> ... desestimar el caso de epígrafe aduciendo que el mismo no era justiciable;
> ... no conceder remedios provisionales para garantizar los votos de los electores que votaron el las elecciones del 2 de noviembre del 2004. Solicitud de certificación de recurso, pág. 4.

El 19 de noviembre de 2004, el Tribunal le concedió a las partes recurridas hasta el mediodía del 20 de noviembre de 2004 para que expusieran su posición. En esa ocasión el Juez suscribiente hizo constar que "proveería no ha lugar a la Solicitud de Certificación por entender que no hay caso o controversia, razón por la cual, cualquier expresión que tenga a bien hacer el Honorable Tribunal Supremo es sólo una opinión consultiva".

El 20 de noviembre de 2004 una mayoría de los integrantes de este Tribunal, amparándose en la alegada importancia de certificar el presente caso y no "abdicar nuestra obligación constitucional", decidió asumir jurisdicción y emitió una *sentencia revocatoria* de la decisión emitida por el Tribunal de Primera Instancia. Al así actuar, *la Mayoría ignoró por completo el hecho de que en el presente caso no existía una controversia justiciable*, pues el asunto aquí planteado quedó resuelto, *de manera final y firme*, mediante el dictamen emitido por el Presidente de la Comisión Estatal de Elecciones, en su Resolución de 12 de noviembre de 2004.

La Mayoría —sin brindar explicación razonable alguna— ignoró la realidad fáctica de que, en virtud de la resolución de la Comisión Estatal de Elecciones, los votos que intentaban "proteger" los peticionarios no sólo se estaban contabilizando como votos válidos, sino que, además, se estaban adjudicando como "votos mixtos" a favor del

Partido Independentista Puertorriqueño y de los candidatos del Partido Popular Democrático.

En esa ocasión, hicimos constar en la sentencia que se emitió que el Juez suscribiente,

"... a pesar de tener preparad[a] y list[a] para ser certificad[a][una] opinión disident[e] ... no intervien[e] y no public[a] s[u] ponenci[a], en esta etapa de los procedimientos, en vista de que en el presente caso se ha presentado una solicitud de remoción (*Notice of Removal*) por una de las partes ante la Corte de Distrito Federal para el Distrito de Puerto Rico, solicitud de remoción que por mandato expreso de un estatuto federal aplicable a Puerto Rico, a saber, 28 U.S.C.A. sec. 1446(d), ordena la paralización automática de los procedimientos judiciales al nivel local o estatal, y priva de jurisdicción al foro local. La actuación de la mayoría resulta inútil, inoficiosa y no vinculante. [El] Jue[z] Asociad[o] Seño[r] Rebollo López ... se reserv[a] el derecho a publicar s[u] opini[ón] disidente ... una vez la solicitud de remoción sea resuelta en forma definitiva." (Énfasis suprimido.) *Suárez v. C.E.E. I*, 163 D.P.R. 347, 363–364 (2004).

## II

En reiteradas ocasiones este Tribunal ha expresado que los tribunales de justicia existen para resolver *controversias genuinas* surgidas entre partes opuestas que tengan un *interés real* en obtener un remedio que haya de afectar sus relaciones jurídicas. *El Vocero v. Junta de Planificación*, 121 D.P.R. 115, 123 (1988); *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715 (1980); *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958). Hemos resuelto que un asunto *no* es justiciable: (i) "cuand[o] se trata de resolver una cuestión política"; (ii) en aquellos casos en que "una de las partes no tiene [legitimación activa] para promover un pleito"; (iii) "cuando después de comenzado un pleito, *hechos posteriores lo convierten en académico*", y (iv) *siempre que "las partes buscan obtener una 'opinión consultiva'*, o cuando *se promueve un pleito que no está maduro"*. (Énfasis suplido y escolio omitido.) *Noriega v. Hernández Colón*, 135 D.P.R. 406, 421–

422 (1994). Véase *Sánchez et al. v. Srio. de Justicia et al.*, 157 D.P.R. 360 (2002).

A esos efectos, en *Com. de la Mujer v. Srio. de Justicia*, ante, pág. 720, expresamos:

> El concepto justiciabilidad tiene su génesis en la jurisdicción norteamericana como derivado del Art. III de dicha Constitución. *Requiere la existencia de un caso y controversia real para el ejercicio válido del poder judicial federal.* Es el término artístico empleado para expresar una *doble limitación* impuesta sobre los tribunales, a saber: (1) que sólo pueden decidir "cuestiones presentadas *en un contexto adversativo* y en una forma históricamente visualizada como capaz de ser resueltas a través del proceso judicial" y (2) la restricción que surge del papel asignado a la judicatura en una distribución tripartita de poderes, diseñada para asegurar que no intervendrá en áreas sometidas al criterio de otras ramas del gobierno. *Flast v. Cohen*, 392 U.S. 83 (1968). La doctrina es autoimpuesta. En virtud de ella los propios tribunales se preguntan y evalúan si es o no apropiado entender en determinado caso tomando en cuenta *diversos factores y circunstancias* mediante un análisis que les permite ejercer su discreción en cuanto al límite de su poder constitucional. (Énfasis suplido.)

*Estas doctrinas de autolimitación están fundamentadas en consideraciones derivadas de la prudencia y en las limitaciones constitucionales que prohíben al foro judicial emitir opiniones consultivas.* Véase *Rexach v. Ramírez*, 162 D.P.R. 130 (2004). Hemos sido *enfáticos* al expresar que no es función de los tribunales —ni éstos pueden— actuar como asesores o consejeros, *por lo que las opiniones consultivas le están vedadas a los tribunales en nuestra jurisdicción.* Véanse: *Com. de la Mujer v. Srio. de Justicia*, ante, pág. 721; *E.L.A. v. Aguayo*, ante, págs. 558–560.

Uno de los factores que debe tomarse en consideración, para determinar la justiciabilidad de un caso, es si éste se ha tornado académico o no. El concepto de *academicidad* recoge la situación en que, aun cumplidos todos los demás requisitos de justiciabilidad, los cambios fácticos o judiciales acaecidos durante el trámite judicial de una controversia tornan en académica o ficticia su solución. Los funda-

mentos en que se apoya dicha doctrina son: (i) evitar el uso innecesario de los recursos judiciales; (ii) asegurar la existencia de suficiente contienda adversativa sobre las controversias para que sean competentes y vigorosamente presentadas a ambas partes, y (iii) evitar un precedente innecesario. *Com. de la Mujer v. Srio. de Justicia*, ante; *E.L.A. v. Aguayo*, ante. Véanse, además: *San Antonio Maritime v. P.R. Cement Co.*, 153 D.P.R. 374 (2001); *Emp. Pur. Des., Inc. v. H.I.E.Tel.*, 150 D.P.R. 924, 936 (2000); *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 81 (1998); *P.P.D. v. Gobernador I*, 139 D.P.R. 643, 675–678 (1995); *Noriega Rodríguez v. Jarabo*, 136 D.P.R. 497, 507–508 (1994); *Noriega v. Hernández Colón*, ante, págs. 437–439; *C.E.E. v. Depto. de Estado*, 134 D.P.R. 927, 935–36 (1993); *Asoc. de Periodistas v. González*, 127 D.P.R. 704, 717 *et seq.* (1991).

Existen, naturalmente, una serie de *excepciones* a la aplicación de la doctrina de academicidad. Éstas son: (i) cuando se presenta una cuestión recurrente o repetitiva del asunto planteado; (ii) en aquellos casos en que la propia demandante termina voluntariamente su conducta ilegal, y (iii) cuando la situación de hechos ha sido cambiada voluntariamente por el demandado, pero que no tiene visos de permanencia. De igual manera se plantea una excepción en los casos en que el tribunal certifica una "clase" en conformidad con la Regla 20 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), y la controversia se torna académica para un miembro de la clase pero no para su representante, y en los casos que aparentan ser académicos pero en realidad no lo son por sus consecuencias colaterales. Íd.

*A tono con lo anterior, hemos sido enfáticos al expresar que si luego de la debida investigación se comprueba que no existe una controversia genuina —por no estar presente ninguna de las excepciones antes mencionadas— los tribunales tienen el deber de desestimar el recurso presentado sin considerar el mérito de sus planteamientos.* Véanse: *El Vocero v. Junta de Planificación*, ante, págs. 124–125; *E.L.A. v. Aguayo*, ante, pág. 562.

## III

En su escrito ante nos la parte peticionaria solicitó de este Tribunal que resolviera, mediante sentencia declaratoria, "que los votos de los demandantes son votos mixtos válidos, los cuales le serán adjudicados a la insignia del PIP y a los candidatos a la gobernación y a comisionado residente del PPD". Solicitud de certificación de recurso, pág. 19. *Ello no obstante, los peticionarios admiten en este mismo escrito que la Comisión Estatal de Elecciones ya resolvió esta controversia a su favor*, ordenando que las papeletas estatales impugnadas fueran contabilizadas por tratarse de votos mixtos válidos y adjudicables. Asimismo, *admiten* que el dictamen de la Comisión Estatal de Elecciones *advino final y firme* por no haber sido solicitada su revisión dentro del término legal dispuesto para ello.

Como vemos, el *dictamen final y firme* de la Comisión Estatal de Elecciones *coincide perfectamente con la contención de los peticionarios, incluso en cuanto a la forma en que estos votos debían ser adjudicados.*([7]) Es por ello que *no* identificamos razón alguna por la cual este Tribunal debía expedir el recurso solicitado *otorgándole a los peticionarios un remedio que ya les había sido concedido como parte de una controversia ya adjudicada*. Es evidente que bajo estas circunstancias la actuación de la Mayoría *no* podía tener efectos prácticos ulteriores. Esto es, precisamente, *lo que se persigue con la doctrina de academicidad, a saber: evitar el uso innecesario de los recursos judiciales*, asegurar la existencia de suficiente contienda adversativa sobre las controversias y *evitar precedentes innecesarios*.

Ya hemos señalado que el dictamen de la Comisión Estatal de Elecciones *advino final y firme*, y que las papeletas aquí en controversia *se estaban contabilizando* tal y como

---

([7]) Esto es, que dichos votos deben ser adjudicados tanto a favor del Partido Independentista Puertorriqueño como a favor de los candidatos del Partido Popular Democrático.

exigían ante nos los peticionarios. Como vemos, al emitir su opinión la mayoría de este Tribunal alegadamente amparados en "la importancia del asunto y el interés público de que este Tribunal intervenga directamente en la adjudicación de un asunto de derecho" (*Suárez v. C.E.E. I*, ante), *se arrogó un poder que no tenía, asumiendo jurisdicción en un caso en el cual no existía controversia real alguna.*([8]) De este modo, la Mayoría no sólo emitió una *opinión consultiva* respecto a la validez de las papeletas de marras, sino que, además, se empeñó en discutir el asunto del recuento electoral, *procediendo a conceder unos remedios para lo cual no tenía jurisdicción.*

Cuando no existe una controversia *viva o genuina*, este Tribunal tiene el *deber de desestimar* el recurso planteado *sin entrar a considerar* los méritos de sus planteamientos. *Actuar de otro modo —como lo hizo la Mayoría— constituye un patente acto de imprudencia judicial y, a todas luces, constituye la emisión de una mera opinión consultiva.* El hecho de que el asunto planteado esté revestido de un gran interés público que incluya una cuestión constitucional —sin más— *no* es suficiente para concederle jurisdicción a este Tribunal si no existe controversia real que resolver.

El deseo de expresarse sobre un asunto novel para proteger el "sufragio" *no* puede de forma alguna ser suficiente para abrir las puertas de este Tribunal para emitir dictámenes que no pasan de ser meras consultas legales. *La controversia que alegadamente "resolvió" este Tribunal al emitir su opinión había sido ya atendida y resuelta por la Comisión Estatal de Elecciones y advino final y firme mucho antes de que este Tribunal se empeñara en asumir jurisdicción en este caso.*

Finalmente, nos parece importante resaltar el hecho de

---

([8]) No debemos pasar por alto el hecho de que para emitir una sentencia declaratoria es necesario que exista "una controversia sustancial entre partes que tienen intereses legales adversos".

que con su actuación la Mayoría *le restó autoridad a las instituciones locales* —en particular a la Comisión Estatal de Elecciones— cuando no reconoció el carácter final y firme de las resoluciones emitidas por la Comisión. *Ante esta actuación mayoritaria, cabe preguntarnos si ésta en algo ayudó a contrarrestar el alegado estado de incertidumbre al que tanto alude la Mayoría o si, por el contrario, tuvo el efecto de aumentarlo.* No cabe duda que el mejor y más correcto curso de acción en este caso hubiese sido reconocer y reiterar el poder del Presidente de la Comisión Estatal de Elecciones para resolver este tipo de asunto *y darle completa validez a la decisión final y firme que éste había emitido.*

## IV

No podemos terminar sin discutir, aun cuando brevemente, la improcedente y hasta sorprendente acción de la Mayoría al certificar la opinión mayoritaria *no obstante* haber sido formalmente notificado el Tribunal de la presentación de una solicitud de remoción ante la Corte de Distrito Federal para el Distrito de Puerto Rico.

La jurisprudencia federal, interpretativa de 28 U.S.C.A. sec. 1446(d), claramente establece que una vez se presenta la petición de remoción ante la Corte de Distrito Federal, se notifica de dicha presentación a todas las partes adversas y se presenta una copia de la petición ante el tribunal estatal, *este último no podrá continuar adelante con los procedimientos*;[9] que el hecho de que todos los demandados no sean parte en la petición, *no la invalida*, ya que ello

---

[9] *In re Diet Drugs*, 282 F.3d 220 (3er Cir. 2002); *Yarnevic v. Brink's, Inc.*, 102 F.3d 753 (4to Cir. 1996); *Sweeney v. Resolution Trust Corp.*, 16 F.3d 1 (1er Cir. 1994); *Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837 (1er Cir. 1988); *Murray v. Ford Motor Co.*, 770 F.2d 461 (5to Cir. 1985); 14C *Wright, Miller and Cooper, Federal Practice & Procedure: Jurisdiction 3d* Sec. 3737 (1998).

*no* es un requisito o defecto jurisdiccional;([10]) que la determinación sobre la validez o no de la petición *será de la exclusiva incumbencia del foro federal*,([11]) y por último, que cualquier sentencia o actuación del tribunal estatal, con posterioridad a la petición de remoción, será nula ab initio.([12])

Somos los primeros en aceptar que *no* resulta "simpática" la situación de que un estatuto federal, en las circunstancias particulares del presente caso, *nos prive* de nuestra responsabilidad constitucional de interpretar nuestras leyes y nuestra Constitución, y de nuestra función rectora de salvaguardar los derechos de quienes acuden ante nosotros amparados en nuestra Constitución.

Nuestros deseos y creencias personales, sin embargo, *no son suficientes para concederle jurisdicción a este Tribunal cuando no la tiene.* Vivimos bajo un *sistema federalista* de gobierno, sistema en el cual los estatutos federales prevalecen sobre los locales; *ello sucede no sólo en Puerto Rico sino también en los cincuenta estados de la Unión Americana.*

## V

En resumen, la actuación de la Mayoría en el presente caso ha resultado ser sorprendente, errónea y lamentable. *Ésta, desafortunadamente, afecta la credibilidad y el prestigio de este Tribunal.* Es por ello que no alcanzamos a

---

([10]) *In re Bethesda Memorial Hospital, Inc.*, 123 F.3d 1407 (11mo Cir.1997); *Balazik v. County of Dauphin*, 44 F.3d 209 (3er Cir. 1995); *Matter of Amoco Petroleum Additives Co.*, 964 F.2d 706 (7mo Cir. 1992); *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422 (5to Cir. 1990); *Johnson v. Odeco Oil & Gas Co.*, 864 F.2d 40 (5to Cir. 1989); *Wright, Miller and Cooper*, ante, Vol. 14B, Sec. 3721.

([11]) *National S.S. Co. v. Tugman*, 106 U.S. 118 (1882).

([12]) *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230 (9no Cir. 1994); *Ward v. Resolution Trust Corp.*, 972 F.2d 196 (8vo Cir. 1992); *Hyde Park Partners, L.P. v. Connolly*, ante; *State of South Carolina v. Moore*, 447 F.2d 1067 (4to Cir. 1971).

comprender el porqué de esta apresurada e improcedente actuación.