Kristen MARTIN, et al., Plaintiffs,

v.

HALLIBURTON, et al., Defendants.

Civil Action No. H–09–0328.

United States District Court,
S.D. Texas,
Houston Division.

Sept. 2, 2011.

John M. Freel, Freel & Freel, PC, East Tawas, MI, Patrick J. Greenfelder, Greenfelder & Greenfelder, Chesaning, MI, Christopher V. Goodpastor, Guy L. Watts, II, Watts Guerra et al., Austin, TX, Willie Ben Daw, III, Daw & Ray LLP, Houston, TX, for Plaintiffs.

Margaret T. Brenner, Schirrmeister Diaz–Arrastia Bremm LLP, Houston, TX, Raymond B. Biagini, Lisa M. Norrett, Timothy K. Halloran, McKenna Long & Aldridge LLP, Washington, DC, for Defendants.

## ORDER

VANESSA D. GILMORE, District Judge.

Pending before the court is Defendant's Motion to Dismiss (**Instrument No. 75**).

### I.

### A.

KBR, Inc. ("KBR") contracted with the United States Government to provide non-combat, logistical support to and for the Logistics Civil Augmentation Program ("LOGCAP") of the United States Army Material Command in Iraq. (Instrument No. 82, at 6). LOGCAP is a United States Department of Defense program designed for peacetime planning and rebuilding Iraqi infrastructure. (*Id.*). In December of 2006, Donald Tolfree ("Tolfree") accepted a position with KBR as a heavy truck driver for United States Military Supply Convoys at Camp Anaconda, located in Iraq. (Instrument No. 75, at 2).

By February 5, 2007, Tolfree had worked for less than one month as a "chase truck driver," following the United States Military Supply Convoys inside the gates of Camp Anaconda to act as a replacement vehicle if a vehicle in the convoy broke down. (*Id.*, at 4–5). On February 5, 2007, KBR instructed Tolfree and Glen Starry ("Starry") to act as chase truck drivers for a military supply convoy traveling from Camp Anaconda to Camp Warhorse. (Instrument No. 75, at 5; Instrument No. 75–14, at 2). Starry said that he did not receive instructions regarding his February 5, 2007 assignment. (Instrument No. 83–4, at 10). Defendants did not provide written instructions to the drivers. (Instrument No. 88–2, at 16). In the hours before the assignment began, Tolfree and Starry were given oral instructions to follow the convoy until the recovery convoy driver, Kevin Studebaker, told them to

exit. (Instrument No. 75–13, at 3; Instrument No. 83–4, at 11). According to Studebaker, Tolfree and Starry were never supposed to leave the gate of Camp Anaconda. (Instrument No. 75–13, at 3). However, Tolfree and Starry, unfamiliar with their jobs and the area, followed the convoy outside of the gate. (Instrument No. 82, at 7; Instrument No. 83–4, at 12).

After driving approximately two miles, Starry used the radio to call out to Studebaker and ask for further direction. (Instrument No. 83–4, at 18). Starry heard no response. (*Id.*). A few moments later, Starry called out on the radio for direction again, without addressing Studebaker specifically. (*Id.*). Starry heard a faint reply to "go back" or "turn around," and assumed the speaker meant for him and Tolfree to return to Camp Anaconda. (*Id.*) Tolfree and Starry left the convoy and returned to Camp Anaconda. (Instrument No. 83–4, at 18).

At this time, the United States Military was aware that insurgents had recently been hijacking convoy trucks and using them as explosive devices. (Instrument No. 83–2, at 23). As a result, all convoy trucks without military escorts and advance warning of arrival were in danger. (*Id.*, at 18). Upon seeing the two unidentified, unaccompanied contractor trucks heading toward the entrance of Camp Anaconda, the United States Military activated the escalation of force protocol for unannounced and unescorted vehicles, (Instrument No. 82, at 8–9) and a United States military gunner shot and killed Tolfree. (Instrument No. 75, at 4).

During the early morning hours of February 6, 2007, two KBR representatives, Brian Walker ("Walker") and Carole Orsak ("Orsak"), delivered the news of Tolfree's death to his daughter, Kristen Martin ("Plaintiff"). (Instrument No. 88–8, at

25). Plaintiff alleges that Walker and Orsak told her that a roadside bomb or an improvised explosive device ("IED") killed Tolfree during a mission. (*Id.*, at 26). Walker said Tolfree was killed instantly. (*Id.*, at 27). Plaintiff testified that Walker and Orsak were kind as they provided her with instructions in the event that the media contacted her and asked about how she wanted the company to handle any additional body parts that were found after the initial recovery. (*Id.*).

Plaintiff alleges that she was under the impression her father had been killed by an IED or roadside bomb until Jenny Foo ("Foo") of the U.S. Embassy in Baghdad called her later in the day on February 6, 2007. (*Id.*, at 34). According to Plaintiff, Foo told her that Tolfree died in a friendly fire accident. (*Id.*). Plaintiff said in her deposition that Walker eventually told her the truth about her father's death after she confronted him with the information from Foo. (*Id.*, at 38).

**B.**

On February 5, 2009, Martin, Tolfree's daughter and the personal representative of his estate, filed a complaint in the Southern District of Texas for negligence, wrongful death, fraud and fraud in the inducement, intentional infliction of emotional distress, survivorship, common law civil conspiracy to commit fraud, fraud, malice and gross negligence against Halliburton Company, KBR Inc., Kellogg Brown & Root, Inc., Kellogg Brown & Root Services, Inc., Services Employees International Inc., and John Does 1–10 ("Defendants"). (Instrument No. 1). Plaintiff is seeking actual monetary damages, compensatory wrongful death damages, compensatory damages for personal injuries, punitive damages, as well as prejudgment and post-judgment interest. (*Id.*, at 24–25).

On April 3, 2009, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure claiming immunity from suit for damages arising from performance of its contractual obligations to, and its relationship with, the United States. (Instrument No. 17, at 8). Defendants also claimed that because they were providing essential services to the United States Armed Forces, the combatant activities exception to the Federal Tort Claims Act shields them from tort liability. (*Id.*). On June 8, 2009, this Court denied Defendants' original Motion to Dismiss. (Instrument No. 42).

On December 6, 2010, Defendants filed a second Motion to Dismiss pursuant to Rule 12(b)(1) arguing that this Court lacks subject matter jurisdiction under the exclusivity-of-remedy provision in the Defense Base Act ("DBA"). (Instrument No. 75, at 1). Defendants claim that the DBA bars Plaintiff's suit. (*Id.*).

On May 6, 2011, Plaintiff filed a Response to the Defendant's Motion to Dismiss arguing that the DBA's exclusivity-of-remedy provision does not bar suits, such as this one, in which defendants fail to secure timely payment of compensation or suits in which the plaintiff's death is not an "accidental injury." (Instrument No. 82, at 1–2). Plaintiff also argues that the DBA does not bar her claim for intentional infliction of emotional distress ("IIED") because that claim is not based on injury to Tolfree. (*Id.*, at 21).

On May 27, 2011, Defendants filed a Reply in Support of their Motion to Dismiss. In their Reply, Defendants assert that the DBA requires an employer to secure payment of compensation by obtaining insurance or by proving its ability to self-insure. (Instrument No. 87, at 3). Defendants contend that the DBA does not require an employer to pay an employee's

benefits. (*Id.*). Defendants argue that, since they did have the requisite insurance, (Instrument No. 75–4), they fulfilled their obligation to secure payment of compensation, (Instrument No. 87, at 3). Defendants also argue that Tolfree's injuries were "accidental" and therefore fall under the jurisdiction of the DBA, (*Id.*, at 5–8), and that Plaintiff's claim of IIED flows directly from the injury to Tolfree and is thus covered by the DBA's exclusivity-of-remedy provision. (*Id.*, at 8). Finally, Defendants contend that, since Plaintiff originally acted as if the DBA applied by filing a Claim for Death Benefits, she should be estopped from claiming that the DBA does not apply. (*Id.*, at 9).

On June 20, 2011, Defendants also attached a Notice of Supplemental Authority notifying this Court of: (a) Magistrate Judge Nancy K. Johnson's Memorandum and Recommendation in *Taylor v. Kellogg Brown & Root, Inc.*, No. H–10–2043, slip op. at 15, 2011 WL 2446429 (S.D.Tex. May 20, 2011) and (b) the district court order, signed by Judge Sim Lake, adopting Magistrate Judge Johnson's Memorandum and Recommendations in *Taylor*. In *Taylor*, the court determined that the plaintiff's tort claims of assault, battery, sexual assault and IIED were subject to the DBA's exclusivity provision. (Instrument No. 87–1).

## II.

■■■ When reviewing a motion to dismiss for lack of subject matter jurisdiction, courts may look to the complaint alone, the complaint and the undisputed facts evidenced in the record or the complaint, the undisputed facts and the court's resolution of the disputed facts. *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 734 (5th Cir.2010). Should the defendant make a factual attack on the court's subject matter jurisdiction, the plaintiff can establish jurisdiction by a preponderance of the evidence. *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir.1989). While the plaintiff bears the burden of proof that jurisdiction exists, *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980), a motion to dismiss for lack of subject matter jurisdiction should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of her claim which would entitle her to relief." *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir.2007). This motion should be settled before addressing the merits of the case so that the plaintiff is not prevented from pursuing her claim in a court of proper jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir.2001).

## III.

### A.

Defendants argue that the exclusivity-of-remedy provision of the DBA strips this Court of subject matter jurisdiction. (Instrument No. 75, at 7). Therefore, Defendants request that this Court grant their Motion to Dismiss for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1). (*Id.*, at 6).

■■■ Congress enacted the DBA to "provide federal workers' compensation coverage for injuries suffered by certain classes of employees working outside the continental United States, including on military bases." *Jones v. Halliburton Co.*, No. 4:07–cv–2179, 791 F.Supp.2d 567, 582, 2011 WL 2066621, at *6, 2011 U.S. Dist. LEXIS 55306, at *22–23 (S.D.Tex. May 24, 2011). When Congress enacted the DBA, it incorporated all non-conflicting sections of the Longshore and Harbor Workers' Compensation Act ("Longshore Act"). *Fisher v. Halliburton*, 703 F.Supp.2d 639, 643 (2010). The Longshore Act is also a

worker's compensation statute designed to limit employer liability and, in exchange, afford employees an efficient means to collect compensation for work related injuries. *See* 42 U.S.C. § 1651.

Both the Longshore Act and the DBA have exclusivity-of-liability provisions. The exclusivity-of-liability provision in the DBA states:

> [t]he liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this Act shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this Act, under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into.

42 U.S.C. § 1651(c).

■ The DBA applies to claims for the "injury or death of any employee." *Id.,* at § 1651(a). However, the DBA does not define "injury." 42 U.S.C. § 1651 et seq. The DBA incorporates portions of the Longshore Act, 42 U.S.C. § 1651(a). Therefore, the Court looks to the Longshore Act for a definition of "injury."

> The term "injury" means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.

33 U.S.C. § 902(2). The DBA will encompass the claim if the harm results either from an accidental injury arising out of, and in the course of employment, including the willful act of third parties, because of the employee's employment. *See Fisher,* 703 F.Supp.2d at 646. If the injuries sustained do not meet the above standard, the DBA does not preempt the claim and common law remedies through the courts are permissible. *Id.* at 655.

### 1.

Plaintiff argues that Defendants did not secure timely payment of compensation benefits to Plaintiff, as required by the Longshore Act. (Instrument No. 82, at 9). As a result, Plaintiff claims a right to pursue tort remedies for damages resulting from Tolfree's death. (*Id.*). Defendants argue that they had secured payment of compensation by obtaining and maintaining a DBA insurance policy. (Instrument No. 87, at 3).

The DBA provides instruction on how to secure payment of compensation. Section 1651 requires that a contractor must "provide for securing to or on behalf of employees engaged in such public work under such contract the payment of compensation and other benefits under the provisions of this Act" and must "maintain in full force and effect during the terms of such contract ... the said security for the payment of such compensation and benefits." 42 U.S.C. § 1651(a)(4). The DBA also incorporated all non-conflicting sections of the Longshore Act. *Fisher,* 703 F. Supp.2d at 643.

The Longshore Act provides an exception to the exclusivity-of-remedy provision when "an employer fails to secure payment of compensation as required by this Act." 33 USC § 905(a) (when an employer fails to secure payment of compensation, an employee or his legal representative may elect to maintain an action at law for dam-

ages on account of such injury or death.). The Longshore Act mandates that employers secure the payment of compensation under the act "by insuring and keeping insured the payment of such compensation ... to insure workmen's compensation and ... to insure payment of compensation under this Act" or "by furnishing satisfactory proof to the Secretary of his financial ability to pay such compensation and receiving an authorization from the Secretary to pay such compensation directly." 33 U.S.C. § 932(a).

Plaintiff argues that an employer who does not timely pay death benefits has failed to secure payment of compensation under the DBA, (Instrument No. 82, at 10), and that Defendants failed to pay Tolfree's funeral expenses within fourteen days of having knowledge of his death. (*Id.*, at 12). However, the Longshore Act and the DBA do not contain provisions stating that the failure to pay expenses within fourteen days results in a lack of coverage under the DBA. The Longshore Act requires the first installment of compensation be paid on the fourteenth day after the employer is notified of the employee's death. 33 U.S.C. § 914(b). The penalties for overdue payments are late fees as prescribed by the Longshore Act. *Id.*, at § 914(e). Under the Longshore Act, an employer has secured payment of compensation if the employer obtained insurance on the payment of compensation or furnished proof that the employer was financially capable of paying such compensation directly. *Id.*, at § 932(a). During the time of Tolfree's injury, Defendants had the requisite insurance. (Instrument No. 75–4). Therefore, Defendants secured payment of compensation as set forth in the DBA and the Longshore Act. *See* 42 U.S.C. § 1651(a)(4), 33 U.S.C. § 932(a). Accordingly, the Court holds that Plain-

tiff's claim is not exempt from the exclusivity-of-remedy provision in the DBA.

### 2.

The DBA preempts a claim when the accidental injury or death arises out of [and] in the course of employment. *Jones,* 791 F.Supp.2d at 581–83, 2011 WL 2066621, at *6–7, 2011 U.S. Dist. LEXIS 55306, at *25 (S.D.Tex. May 24, 2011). Defendants argue that Tolfree's death was accidental. (Instrument No. 75, at 11). Plaintiff disputes this contention. (Instrument No. 82, at 13). Neither the DBA nor the Longshore Act defines "accident." "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). In *Fisher v. Halliburton,* a U.S. District Court for the Southern District of Texas held that an "accident" under the DBA must be "undesired and unexpected." *Id.* at 646 (In the absence of a Fifth Circuit ruling on the definition of "accident," the *Fisher* court used legal dictionaries from the early 1900s to determine the plain meaning of "accident" at the time Congress enacted the Longshore Act.). The *Fisher* court held that in order for a plaintiff's claims to be outside of the DBA, she must show that the "actual event giving rise to [her] claims was specifically expected." *Id.* at 658. According to the district court, "[m]ere anticipation or uncertain apprehension will not suffice." *Id.,* at 647. The court found nothing in the legislative history of the DBA to refute its definition of "accident." *Id.* at 650. The *Fisher* court's analysis mirrors that of the Supreme Court in *Potomac Elec. Power Co. v. Director Office of Worker's Compensation Programs,* 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980) (interpreting language in the Longshore Act by examin-

ing the plain language of the statute, decisions regarding the New York Workers' Compensation Law of 1922 and the legislative history of the Longshore Act).

New York Court of Appeals cases are also worthy of review in defining "accident" because the New York Workmen's Compensation Act of 1922 was modeled after the Longshore Act. In *Woodruff v. R.H. Constr. Co.*, the New York Court of Appeals determined that an "accidental event takes place without one's foresight or expectation; an event that proceeds from an unknown cause, or is an unusual effect of the known cause, and therefore not expected." 228 N.Y. 276, 278, 127 N.E. 270 (N.Y.1920).

Defendants argue that they did not expect Tolfree to be injured or killed, so his death was "accidental" and covered by the DBA. (Instrument No. 87, at 6). Plaintiff argues that Tolfree's death was not an accident because it was not unexpected as a result of Defendants' conduct. (Instrument No. 82, at 16). Plaintiff does not contend that Defendants desired Tolfree's death. (*Id.*).

In *Fisher*, the employers received multiple e-mails from in house security managers detailing the reasons that April 9, 2004 would be a particularly dangerous day for Americans in Iraq. *Fisher*, 703 F.Supp.2d at 659. On April 8, the employer's convoys took heavy fire throughout the day and the security e-mail warnings continued. *Id.* at 660. Those e-mails spoke of significant intelligence showing that April 9 would be equally dangerous. *Id.* On April 9, the convoys had been under heavy fire throughout the morning. *Id.* at 662. By the time the Hamil convoy, the convoy at issue in *Fisher*, four other convoys were under fire in an area through which the Hamil convoy would have to pass. *Id.* at 662. In that case, the court found that the DBA did not preempt the claim because

the employers had not proved the event leading to the injury was both undesired and unexpected. *Id.*

In the present case, Defendants were aware of the certain danger that awaited individuals who approached the gate at Camp Anaconda unexpected and unescorted. (Instrument No. 83–2). The military procedure of warning unknown vehicles with a flare and then employing deadly force was not an event that proceeded from an unknown cause; the Military's reaction to Tolfree was standard procedure. (*Id.*, at 27). However, unlike the employers in *Fisher* who knew from e-mails and the heavy fire on April 8 that the Hamil convoy would experience danger, the evidence in this case illustrates that Defendants did not know that Tolfree and Starry would be in such danger. (Instrument No. 75–12, at 3). Studebaker allegedly drew Tolfree and Starry a map prior to the convoy's departure and was "confident" that the pair knew where they were going. (Instrument No. 75–13, at 2). When Studebaker told them to "go back," he believed Tolfree and Starry were inside the gate of Camp Anaconda. (*Id.*, at 5). Studebaker said that he would not have told Tolfree and Starry to return from outside of the gate without a military escort. (*Id.*). Plaintiff does not contest Defendants' assertion that Studebaker did not know Tolfree and Starry were outside the gate at the time of Studebaker's instruction to "go back." (Instrument No. 82). Plaintiff's only argument is that Defendants expected, or should have expected, that Tolfree would suffer injury or death if he approached the gate of Camp Anaconda unexpected, unannounced an unescorted. (*Id.*, at 16–17).

Defendants have presented evidence from Studebaker's deposition that they did not desire nor expect that Tolfree and Starry were attempting to reenter Camp

Anaconda from outside the gate. (Instrument No. 75–13, at 2). Plaintiff, however, has not preserved evidence to the contrary. Based on the evidence, the Court cannot find that Defendants specifically expected that Tolfree would be injured and killed. Therefore, the Court finds that the tragedy of Tolfree's death was an accident that occurred without foresight or expectation. Accordingly, Tolfree's injury was "accidental" under the DBA. *See* 33 U.S.C. § 902(2).

In order for a claim to fall under the DBA's coverage, the "accidental injury" must also arise out of and in the course of employment. 33 U.S.C. § 902(2). The Fifth Circuit recently affirmed that the phrase "out of and in the course of employment" does not require a causal relationship and requires only that the "obligations or conditions of employment create the zone of special danger out of which the injury arose." *Jones v. Halliburton,* 583 F.3d 228, 238 (5th Cir.2009).

The relationship between Tolfree's injury and his employment is clear because his job as a KBR chase truck driver created the "zone of special danger out of which [his] injury arose." *Jones,* 583 F.3d at 228. Tolfree was working at Camp Anaconda in Iraq because he was obligated by the conditions of his job to be there. (Instrument No. 1, at 6). Accordingly, the Court finds that Tolfree's injury arose out of and in the course of his employment. *See* 33 U.S.C. § 902(2).

As the Court finds that Tolfree's injury was accidental and arose out of and in the course of his employment, the Court holds that Plaintiff's claims of negligence, wrongful death, fraud and fraud in the inducement, survivorship, common law civil conspiracy to commit fraud, fraud, malice and gross negligence are barred under the exclusivity-of-remedy provision in the DBA. 42 U.S.C. § 1651(c) (finding the liability of an employer under the DBA shall be exclusive and in place of all other liability). Defendants' Motion to Dismiss is granted as to those claims.

**B.**

Some courts have found a narrow exception to the exclusivity-of-remedy provisions in the DBA and the Longshore Act where an employer has a specific intent to injure the employee. *Johnson v. Odeco Oil & Gas Co.,* 679 F.Supp. 604, 607 (E.D.La.1987) (citing *Houston v. Bechtel Assoc. Professional Corp.,* 522 F.Supp. 1094, 1096 (D.D.C.1981) ("Nothing short of specific intent to injure the employee falls outside the scope of § 905(a). Absent such specific intent, the employee is foreclosed from maintaining a tort action against his employer."))

Defendants argue that this exception does not apply because none of Defendants' agents intended to cause Tolfree harm. (Instrument No. 75, at 17). The Fifth Circuit described the limited applicability of this exception in *Johnson v. Odeco Oil & Gas Co.,* 864 F.2d 40 (5th Cir.1989). In that case, an employee suffered eye and lung injuries after a hurricane struck the platform where he was working and released poisonous gases. *Id.,* at 41. The court found that the employee's injury was not the result of an intentional act by the employer even though the employer did make the choice to leave its employees on the platform despite knowledge of the hurricane. *Id.,* at 44 (holding that the plaintiff could not prove that the employer left employees on the platform for the specific purpose of exposing them to injury by the hurricane). Plaintiff in the instant case does not allege that Defendants had any specific intent to cause Tolfree's injury, (Instrument No. 82, at 4). Therefore, the Court finds that this exception to the DBA will not apply.

## C.

Defendants argue that the Court should dismiss Plaintiff's claim of intentional infliction of emotion distress because the claim is predicated on Tolfree's death in Iraq, which is an accident covered by the DBA. (Instrument No. 75, at 16). Plaintiff argues that her claim for intentional infliction of emotional distress is not preempted by the DBA because it was not predicated on Tolfree's death. (Instrument No. 82, at 21). Plaintiff argues that her injury was sustained when Defendants misrepresented the circumstances of her father's death. (*Id.*, at 21). Both parties rely upon *Fisher* to advance their claims.

In *Fisher*, the court found that the physical injuries Kevin Smith–Idol sustained were "accidental" as defined by the Longshore Act and therefore covered by the DBA. 703 F.Supp.2d at 659. Smith–Idol pursued the theory that the DBA did not cover his claim for fraudulent inducement. *Id.* However, the court found that the DBA covered his fraudulent inducement claim because one element of fraud required there be an injury. *Id.* The injury in his case was the "accidental" bodily harm that was covered by the DBA. *Id.* Accordingly, the *Fisher* court found that Smith–Idol's claim for fraudulent inducement was also covered by the DBA. *Id.*

The "accidental" injury in this case was Tolfree's death. Plaintiff stated that her claim for intentional infliction of emotional distress is based on the direct injury she sustained when Defendants misrepresented the circumstances of her father's death by telling her that Tolfree was killed by a roadside bomb. (Instrument No. 82, at 21; Instrument No. 88–8, at 25). Unlike Smith–Idol's claim of fraudulent inducement which flowed from the "accidental" injury, Plaintiff's claim of intentional infliction of emotional distress flows from injury against her and not the "accidental" injury

Tolfree sustained. Accordingly, the Court finds that Plaintiff's claim for intentional infliction of emotional distress is not barred by the DBA. Therefore, Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiff's intentional infliction of emotional distress claim. (Instrument No. 75, at 11).

## IV.

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Dismiss. **(Instrument No. 75).** Defendants' Motion to Dismiss is granted as to Plaintiff's claims of negligence, wrongful death, fraud and fraud in the inducement, survivorship, common law civil conspiracy to commit fraud, fraud, malice and gross negligence. Defendants' Motion to Dismiss is denied as to Plaintiff's claim of intentional infliction of emotional distress. (Instrument No. 75).

The Clerk shall enter this Order and provide a copy to all parties.